# WILSON *v.* NORTH CAROLINA.

**ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.**

No. 558.   Submitted January 17, 1898. — Decided March 21, 1898.

Chapter 320 of the Laws of North Carolina of 1891 was a valid law, and the action of the Governor of the State under it in suspending the plaintiff in error as railroad commissioner, appointed under it, was, as construed by the Supreme Court of that State, a valid exercise of the power conferred upon the Governor by that act, and was due process of law, within the meaning of the Constitution.

The Federal question which is attempted to be raised in this case is unfounded in substance, and does not really exist.

The judgment of the state court in this case operated of itself to remove the plaintiff in error from the office of railroad commissioner, and there is no foundation in the evidence for the allegation that his successor knew of the filing of the supersedeas bond when he took possession of the office, or was guilty of contempt in doing so.

Two motions were made in this case. The defendant in error made a motion to dismiss the writ on the ground of want of jurisdiction. The plaintiff in error obtained from this court a rule against the relator Caldwell to show cause why he should not be punished as for a contempt in proceeding upon the judgment of the state court after a writ of error from this court had been allowed and a supersedeas bond duly filed. The two motions were heard together. The following were the facts presented upon the motion to dismiss:

By chapter 320, of the laws of 1891, the general assembly of North Carolina passed an act creating a state railroad commission, the first section of which is set out in the margin.[1]

---

[1] "There shall be three commissioners elected by the general assembly to carry out the provisions of this act. . . . Said commissioners shall not jointly, or severally, or in any way, be the holder of any stock or bond, or be the agent or attorney or employé of any such company, or have any interest in any way in such company, and shall so continue during the term of his office, and in case any commissioner shall as distributee or legatee, or in any other way, have or become entitled to any stock or bonds or

At the same session the legislature passed another act making such commission a court of record.

Under the authority of the first mentioned act, James W. Wilson, the plaintiff in error, was elected railroad commissioner by the general assembly of 1893, for the term ending April 1, 1899, and he duly qualified and entered upon the discharge of his duties as such railroad commissioner.

On the 24th of August, 1897, the Governor sent a communication to the plaintiff in error, in which, after stating that it had been charged that he had been guilty of a violation of the act above mentioned, and giving the particulars regarding such violation, the Governor directed him to show cause on a day named, at the office of the executive, in Raleigh, why he should not be suspended from office, and a report thereof made to the next general assembly according to law, and he was directed on the return day of the notice to make answer and proofs in writing and to be present in person or by counsel, at his election.

On the return day the plaintiff in error appeared and denied in writing the various charges contained in the Governor's communication, after which, in explanation of the charges, he made a written statement in regard to them. The plaintiff in error demanded of the Governor that the evidence against him be produced and that he have an opportunity to confront

---

interest therein of any such company he shall at once dispose of the same; and in case any commissioner shall fail in this, or in case any one of them shall become disqualified to act, then it shall be the duty of the governor to suspend him from office and to report the fact of his suspension, together with the reason therefor, to the next general assembly, and the question of his removal from office shall be determined by a majority of the general assembly in joint session. In any case of suspension the governor shall fill the vacancy, and if the general assembly shall determine that the commissioner suspended shall be removed, then the appointee of the governor shall hold until his successor is elected and qualified as hereinbefore provided, but if the general assembly shall determine that the suspended commissioner shall not be removed from his office, then the effect shall be to reinstate him in said office. The person discharging the duties of said office shall be entitled to a salary for the time he is so engaged, but a commissioner who is suspended shall be allowed the salary during his suspension in case he should be reinstated by the next general assembly."

his accusers and cross-examine the witnesses. This demand was refused.

After receiving the answer and explanation of the plaintiff in error, and after hearing him upon the return day, the Governor subsequently and on the 23d of September, 1897, sent him a written notice, in which he said to the plaintiff in error " that you have not only violated said act in the specification set out in said act, but that you have otherwise, within the meaning and intent and words of said act, become disqualified to act." The Governor, therefore, assuming to proceed under the statute, further informed the plaintiff in error that he thereby suspended him " from the office of railroad commissioner and chairman of said commission, such suspension to continue until the question of your removal or restoration shall be determined by a majority of the general assembly in joint session. The fact of your suspension, together with the reasons therefor, and the evidence, documents and information connected therewith, will be reported to the next general assembly. You will further take notice that under and by virtue of the powers conferred and duties imposed by law upon the chief executive I have appointed L. C. Caldwell, Esq., of the county of Iredell, to fill the vacancy created by your suspension. Inasmuch as you are understood to deny the power of the executive to suspend you from office, as provided by the statutes, I have requested Mr. Caldwell to make demand upon you for the possession of the office and upon your refusal, to bring action therefor to the end that the title to the office may be judicially determined.

" D. L. RUSSELL, <em>Governor</em>."

The plaintiff in error in reply to the communication of the Governor sent him the following letter :

" RALEIGH, N. C., <em>September</em> 24, 1897.

" To D. L. RUSSELL, <em>Governor</em>.

" SIR: Yours of the 23d inst. is hereby acknowledged. In reply I will say that I shall disregard your order to suspend, but will continue to do business at the old stand until

removed by a tribunal other than a self-constituted 'star chamber.'

"JAS. W. WILSON,

"*Chairman Railroad Commission.*"

Mr. Caldwell duly qualified as railroad commissioner, and thereupon demanded that the plaintiff in error should surrender the office, papers, records, etc., to him, which the plaintiff in error refused to do. Mr. Caldwell then obtained leave from the attorney general to bring this action in the nature of a *quo warranto* to test the title to the office. In the complaint the foregoing facts are set forth and a judgment asked determining the title to the office to be in relator and granting him judgment for the possession thereof.

The defendant below served an answer, in which it was admitted that the Governor undertook or attempted to suspend the defendant from his office, and that he designated the plaintiff, the relator, for the vacancy which he had attempted to create, and that the relator had taken the oath prescribed by law for railroad commissioner. It was also admitted that the defendant refused to vacate his office or to surrender the same to the relator, and the defendant alleged that he was advised that his suspension was illegal, and that he was still entitled to discharge the duties of his office. He also set up that by an act of the general assembly of the State the railroad commission had been constituted a court of record inferior to the Supreme Court, to be known as the board of railroad commissioners, and with general jurisdiction as to all subjects embraced in the act creating the commission. Being a judge of a court of record, the defendant alleged that the Governor had no constitutional power to suspend him.

The answer then set forth the proceedings already mentioned, resulting in the suspension of the defendant by the Governor, and it also set forth the various demands made by defendant before the Governor, to be confronted with witnesses and to have an opportunity to cross-examine them, and the Governor's refusal of those demands, and as a result the

defendant alleged that the Governor had, without evidence and without trial found that the defendant had violated the law, and had become disqualified to act as railroad commissioner, and that he had, without a more specific finding, assumed to suspend the defendant and deprive him of his office.

The defendant also alleged in his answer that the action of the Governor was taken in violation of the Fourteenth Amendment of the Constitution of the United States.

Upon these pleadings the action came on for trial, and the record states that "at the conclusion of the reading of the pleadings the defendant tendered the following issues and demanded a trial by jury:

"1. Is the plaintiff entitled to the office of railroad commissioner?

"2. Does the defendant unlawfully intrude into, hold and exercise the office of railroad commissioner and chairman of said commission?

"3. Has the defendant acquired any interest in any way in the Southern Railway Company in violation of law?

"4. Has the defendant become disqualified to act as a fair judge or commissioner, or has he become in any way disqualified to act?

"5. Did the defendant prior to September 1, 1897, sell and convey for a valuable consideration the Round Knob Hotel to R. M. Brown?

"6. Did the defendant demand of the Governor that the evidence against him be produced and that he have an opportunity to confront his accusers and cross-examine the witnesses against him?

"7. Was said demand refused?

"8. Was any evidence produced?"

The court refused to submit these questions to the jury and the defendant excepted.

The plaintiff thereupon moved for judgment upon the complaint and answer. The defendant objected that the motion was irregular and that the plaintiff should either demur or go to trial before the jury, and that the statute in question and the action of the Governor, set out in the pleadings, deprived

defendant of his office without due process of law and denied to him the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States, the protection of which he expressly claimed.

The court ruled that the plaintiff was entitled to judgment upon the pleadings, which judgment was thereupon rendered, and the defendant excepted and appealed to the Supreme Court of the State. After argument that court adjudged that the defendant had been lawfully suspended from the office of railroad commissioner; that the relator had been duly appointed to fill the vacancy thus created, and that the defendant should be ousted from and the relator inducted into that office. Judgment to that effect was accordingly entered. The defendant then sued out a writ of error from this court, which was allowed. The two motions were then made, one to dismiss the writ of error, and the other to punish the defendant as for contempt.

*Mr. R. O. Burton* for plaintiff in error.

*Mr. James C. McRae, Mr. W. H. Day* and *Mr. A. C. Avery* for defendant in error.

MR. JUSTICE PECKHAM, after stating the case, delivered the opinion of the court on the motion to dismiss.

A consideration of the facts convinces us that the motion to dismiss this writ of error for lack of jurisdiction ought to be granted.

Under the statute of 1891, creating the railroad commission and providing for the appointment, suspension and removal of the officers of such commission, the act of the Governor in suspending the plaintiff in error was not a finality. Before there could be any removal, the fact of suspension was to be reported to the next legislature by the Governor, and unless that body removed the officer the effect was to reinstate him in office, and he then became entitled to the salary during the time of his suspension.

In speaking of the statute and the purpose of this particular provision the Supreme Court of the State said: "The duty of suspension was imposed upon the Governor from the highest motives of public policy to prevent the danger to the public interests which might arise from leaving such great powers and responsibilities in the hands of men legally disqualified. To leave them in full charge of their office until the next biennial session of the legislature, or pending litigation which might be continued for years, would destroy the very object of the law. As the Governor was, therefore, by the very letter and spirit of the law, required to act and act promptly, necessarily upon his own findings of fact, we are compelled to hold that such official action was, under the circumstances, due process of law. Even if it were proper, the Governor would have no power to direct an issue like a chancellor."

The highest court of the State has held that this statute was not a violation of the constitution of the State; that the hearing before the Governor was sufficient; that the office was substantially an administrative one, although the commission was designated, by a statute subsequent to that which created it, a court of record; that the officer taking office under the statute was bound to take it on the terms provided for therein; that he was lawfully suspended from office; and that he was not entitled to a trial by jury upon the hearing of this case in the trial court. As a result the court held that the defendant had not been deprived of his property without due process of law, nor had he been denied the equal protection of the laws.

The controversy relates exclusively to the title to a state office, created by a statute of the State, and to the rights of one who was elected to the office so created. Those rights are to be measured by the statute and by the constitution of the State, excepting in so far as they may be protected by any provision of the Federal Constitution.

Authorities are not required to support the general proposition that in the consideration of the constitution or laws of a State this court follows the construction given to those instruments by the highest court of the State. The exceptions to

this rule do not embrace the case now before us. We are, therefore, concluded by the decision of the Supreme Court of North Carolina as to the proper construction of the statute itself, and that as construed it does not violate the constitution of the State.

The only question for us to review is whether the State, through the action of its Governor and judiciary, has deprived the plaintiff in error of his property without due process of law, or denied to him the equal protection of the laws.

We are of opinion the plaintiff in error was not deprived of any right guaranteed to him by the Federal Constitution, by reason of the proceedings before the Governor under the statute above mentioned, and resulting in his suspension from office.

The procedure was in accordance with the constitution and laws of the State. It was taken under a valid statute creating a state office in a constitutional manner, as the state court has held. What kind and how much of a hearing the officer should have before suspension by the Governor was a matter for the state legislature to determine, having regard to the constitution of the State. The procedure provided by a valid state law for the purpose of changing the incumbent of a state office will not in general involve any question for review by this court. A law of that kind does but provide for the carrying out and enforcement of the policy of a State with reference to its political and internal administration, and a decision of the state court in regard to its construction and validity will generally be conclusive here. The facts would have to be most rare and exceptional which would give rise in a case of this nature to a Federal question.

Upon this subject it was said, in the case of *Allen v. Georgia*, 166 U. S. 138, 140, as follows: "To justify any interference upon our part it is necessary to show that the course pursued has deprived, or will deprive, the plaintiff in error of his life, liberty or property without due process of law. Without attempting to define exactly in what due process of law consists, it is sufficient to say that, if the Supreme Court of a State had acted in consonance with the constitutional

laws of a State and its own procedure, it could only be in very exceptional circumstances that this court would feel justified in saying that there had been a failure of due legal process. We might ourselves have pursued a different course in this case, but that is not the test. The plaintiff in error must have been deprived of one of those fundamental rights, the observance of which is indispensable to the liberty of the citizen, to justify our interference."

This statement is quoted with approval in *Hovey* v. *Elliott*, 167 U. S. 409, 443.

No such fundamental rights were involved in the proceedings before the Governor. In its internal administration the State (so far as concerns the Federal Government) has entire freedom of choice as to the creation of an office for purely state purposes, and of the terms upon which it shall be held by the person filling the office. And in such matters the decision of the state court, that the procedure by which an officer has been suspended or removed from office was regular and was under a constitutional and valid statute, must generally be conclusive in this court.

In *Kennard* v. *Louisiana*, 92 U. S. 480, the proceeding under which the title to the office of Justice of the Supreme Court of the State was tried, was held not to violate the Fourteenth Amendment of the Constitution of the United States. The court said the officer had an opportunity to be heard before he was condemned. There was no intimation in that case that a hearing such as was had here would be insufficient or that the officer would be entitled to be " confronted with his accusers and to cross-examine the witnesses," and to have a jury trial. In *Foster* v. *Kansas*, 112 U. S. 201, the *Kennard case* was approved. Neither case gives any support to the claim that such a hearing as was given in this case would be insufficient under the Fourteenth Amendment.

Nothing in that amendment was intended to secure a jury trial in a case of this nature.

The demand made by the plaintiff in error for such a trial in the court below must have been for the purpose of submitting to the jury the question of the truth of the allegations

set up in the answer regarding the proceedings before the Governor, and to claim that if the jury found them to be true, he was not legally suspended. But the motion for judgment on the pleadings was equivalent to a demurrer to the answer for insufficiency, and was, therefore, an admission of all the facts well pleaded. The question then became one of law for the court to decide, and in granting the motion the court did decide that no defence was set forth in the answer. In a case like this, such a decision of the state court is conclusive. The mere refusal of a jury trial, in and of itself and separated from all other matters, raises no Federal question. *Walker* v. *Sauvinet*, 92 U. S. 90.

In the proceeding for trying the title to office in the case of *Kennard* v. *Louisiana*, 92 U. S. 480, the statute provided for a hearing without a jury, and this court held it was not objectionable for that reason.

Upon the case made by the plaintiff in error, the Federal question which he attempts to raise is so unfounded in substance that we are justified in saying that it does not really exist; that there is no fair color for claiming that his rights under the Federal Constitution have been violated, either by depriving him of his property without due process of law or by denying him the equal protection of the laws.

In *Hamblin* v. *Western Land Company*, 147 U. S. 531, it was stated that "a real, and not a fictitious, Federal question is essential to the jurisdiction of this court over the judgments of state courts. *Millingar* v. *Hartupee*, 6 Wall. 258 ; *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 87. In the latter case it was said that 'the bare averment of a Federal question is not in all cases sufficient. It must not be wholly without foundation. There must be at least color of ground for such averment, otherwise a Federal question might be set up in almost any case, and the jurisdiction of this court invoked simply for the purpose of delay.' "

We think this case falls within the principle thus stated. Although an office has been held in North Carolina to be generally and in a certain restricted sense the property of the incumbent, yet in this case the Supreme Court held that the

incumbent, in taking the office, holds its subject to the act creating it, which binds him by all its provisions, all of which were held to be valid.   We should be very reluctant to decide that we had jurisdiction in such a case, and thus in an action of this nature to supervise and review the political administration of a state government by its own officials and through its own courts.   The jurisdiction of this court would only exist in case there had been, by reason of the statute and the proceedings under it, such a plain and substantial departure from the fundamental principles upon which our government is based that it could with truth and propriety be said  that if the judgment were suffered to remain, the party aggrieved would be deprived of his life, liberty or property in violation of the provisions of the Federal Constitution.

We are of opinion that the facts herein present no such case, and that the jurisdiction of this court does not extend to the case as made in the record now before us.

For these reasons the motion of the defendant in error to dismiss this writ should be granted, and the writ is accordingly

*Dismissed.*

---

The following are the facts upon the motion to punish defendant in error as for a contempt:

The plaintiff in error, after the entry of the judgment of the Supreme Court affirming the judgment of ouster, sued out a writ of error from this court, which was duly allowed by the Chief Justice of the Supreme Court of that State on the 23d day of December, 1897, and on the same day a good and sufficient bond, conditioned as required by law in cases of supersedeas, was tendered, and the Chief Justice duly approved it and signed the citation.   A few minutes after seven o'clock in the afternoon of that day the writ of error with the petition therefor and the assignment of errors and the citation and bond were filed in the clerk's office of the state Supreme Court, and at the same time copies of the writ of error were lodged in the clerk's office, for the State of North Carolina and for the relator.   The plaintiff in error alleged, on informa-

tion and belief, that the relator, with full knowledge of the issuing of the writ and of the action of the Chief Justice, broke into the room occupied as offices by the railroad commission and took possession. The judgment of affirmance directed the issuing of a writ of possession. On the morning of the 24th of December, 1897, counsel for the relator made a motion in the state court to set aside the supersedeas, while at the same time counsel for the plaintiff in error made a motion that the execution of the writ of possession issued on the judgment of the state court be recalled on account of the supersedeas. Both motions were refused, and an opinion delivered by Mr. Justice Clark holding that the judgment of the court *ex proprio vigore* placed the relator in the possession of the office at the time the judgment was filed, and that such judgment took effect immediately upon being entered, and it was not superseded by the subsequent writ of error, regular or irregular. He also held that the court had no power to set aside the writ of error or to pass upon the regularity thereof.

The relator made answer under oath. He alleged that after the judgment of the Supreme Court of North Carolina was rendered, and pursuant to its directions, a writ was issued out of that court at half-past five o'clock of that day, and was immediately placed in the hands of the sheriff, and that the sheriff went to the offices of the railroad commission for the purpose of executing the writ, but that the plaintiff in error could not be found, and that he was absent from the county and State for the purpose, as alleged, of avoiding service of the writ; that the doors of the commission's rooms were locked, and the sheriff left the building for the purpose of getting keys or other means of entry, but did not return, and that the relator, after waiting a reasonable time for the return of the sheriff and being advised by counsel that he had good right in law so to do, procured the door of the room to be opened, and he then entered therein and assumed to exercise the duties of the office of railroad commissioner.

He denied under oath that any notice of the filing of a supersedeas by the plaintiff in error was served upon him, or that he had any knowledge of the filing of said bond until

the day after the taking possession of the rooms of the commission as above stated.

Mr. Justice Peckham, after stating the above facts, delivered the opinion of the court on the motion to punish for contempt.

Plaintiff in error claims that by virtue of the allowance of the writ of error and the filing of the supersedeas bond, the relator was precluded from taking any step under the judgment of the state court, which ousted the plaintiff in error and adjudged the right to the office to be in the relator. It is argued that the filing of a proper bond operates as a supersedeas of the judgment in an action in the nature of a *quo warranto*, as well as in any other action. *United States, ex rel. Crawford* v. *Addison*, 22 How. 174. In that case Addison held the office of mayor of the city of Georgetown. Proceedings in the nature of *quo warranto* were commenced against him by the United States on the relation of Crawford. Upon the trial of the action judgment of ouster was entered against the defendant. A writ of error from this court was sued out by him and a sufficient bond was filed. The relator applied to this court for a peremptory writ of mandamus to be directed to the judges of the Circuit Court of the District of Columbia commanding them to execute the judgment of that court by which Addison had been ousted and the relator adjudged entitled to the office. This court denied the motion, and decided that after a writ of error had been sued out from this court and the proper bond filed further proceedings were stayed in the court below. It was not a case where immediately upon the entering of the judgment of ouster the court had directed the possession of the office to be taken by the relator, who had taken possession accordingly. The court was asked to actively intervene to put the relator in possession of the office, notwithstanding the allowance of a writ of error and the filing of a bond. The court refused to do so, holding that the supersedeas bond stayed further proceedings under the judgment.

In *Foster* v. *Kansas*, 112 U. S. 201, the attorney general of Kansas had instituted a proceeding to remove Foster, the plaintiff in error, from the office of county attorney for Saline County. The Supreme Court of Kansas rendered judgment on the 1st of April, 1884, removing Foster, and, under a statute of the State making it his duty so to do, the judge of the district court of Saline County, upon being presented with an authenticated copy of the record of the Supreme Court which removed Foster, duly appointed Moore to such office, and approved his bond on the 7th of April. A writ of error from this court had been allowed in Washington on the 5th of April, and the supersedeas bond approved and citation signed. Although notice of these facts was telegraphed on the same day from Washington to counsel in Kansas, who immediately exhibited the telegram to the judge of the district court, and notified him of what had been done in Washington, yet neither the writ of error nor the supersedeas bond arrived from Washington until the 8th of April, on which day they were duly lodged in the office of the clerk of the Supreme Court of the State. Moore, the appointee of the district judge, thereafter appeared as county attorney, and a rule was therefore granted requiring him to appear before this court and show cause why he should not be adjudged in contempt for violating the supersedeas. This court, after argument, held that he was not in contempt, and that the supersedeas was not in force when Moore was appointed to and accepted the office. The court said : " The judgment operated of itself to remove Foster and leave his office vacant. It needed no execution to carry it into effect. The statute gave the judge of the district court authority to fill the vacancy thus created. The judge was officially notified of the vacancy on the 7th, when the authenticated copy of the record of the Supreme Court was presented to him. The operation of that judgment was not stayed by the supersedeas until the 8th, that being the date of the lodging of the writ of error in the clerk's office. It follows that the office was in fact vacant when Moore accepted his appointment, gave his bond and took the requisite oath. He was thus in office before the supersedeas became

operative. What effect the supersedeas had, when it was afterwards obtained, on the previous appointment, we need not consider. This is not an appropriate form of proceeding to determine whether Foster or Moore is now legally in office." The rule was therefore discharged.

In this case it is also true that the judgment operated of itself to remove the plaintiff in error. The judgment also adjudged the title to the office to be in the relator. After the filing of the supersedeas bond it may be assumed that further action under the judgment was stayed. The question is whether the relator is shown to be guilty of a contempt in proceeding to take possession after he knew of the filing of the bond. He swears unequivocally that he was ignorant of the fact of the allowance of a writ or the filing of the bond at the time when he took possession of the room occupied by the commission, and that he was not informed of that fact until some time the next day. We think this a sufficient answer to the case as it is now presented to us, and that any further proceeding is rendered unnecessary because of our conclusion to dismiss the writ of error for want of jurisdiction. We see no evidence of any intentional contempt on the part of relator, and our conclusion is that the rule must be

*Discharged.*

---

In WILSON *v.* NORTH CAROLINA, No. 559 submitted with No. 558, the same questions are involved and the same orders are made.