# Hawkins, Treasurer, *v.* Roberts & Son
# and
# Morrow *v.* Earle.

*Petition for Mandamus and Quo Warranto Proceedings.*

1.  *Constitutional law; desire or intention of Governor to remove incumbents from office can not be considered in determining the constitutionality of the acts of the legislature.*—Whether the action of the Governor in recommending to the General Assembly the passage of an act to abolish the court of county commissioners was prompted by the sole intent and purpose, not of abolishing the old and creating a new tribunal, but of expelling the incumbents of such offices without giving them their constitutional right of trial by jury, can not be inquired into or considered in determining the constitutional validity of such act after its passage by the General Asembly.

2.  *Same; construction of act of legislature establishing board of revenue of Jefferson county; does not contain two subjects.*— A statute is not offensive to section 2, Article IV of the Constitution, providing that "each law shall contain but one subject which shall be clearly expressed in the title," because it contains two subjects in its title, if only one of them is contained in the law; and, therefore, the act of the General Assembly, approved February 18th, 1899, entitled "An act to establish a Board of Revenue for Jefferson County, and for the abolish-

[Hawkins, Treas. v. Roberts & Son.]

ment of the court of county commissioners of said county," is not unconstitutional as containing two subjects; since the provision of the act creating the board of revenue and vesting it with all the powers of the court of county commioners, necessarily, by implication, abolished the court of county commissioners, and the provisions in the act as to such abolishment, which were not referable and cognate to the general subject of creating the board of revenue and not proper to make a complete enactment for such purpose, were mere surplusage and not to be considered in passing upon the constitutionality of said act.

3. *Same; same; does not infringe constitutional provision as to impeachment of officers.*—Section 3 of Article VII .of the Constitution, providing for the impeachment and removal of State and county officers is not an inhibition upon the power of the legislature to abolish courts and offices of statutory and not of constitutional creation; and, therefore, the act approved February 18, 1899, establishing a Board of Revenue for Jefferson County, and abolishing the court of county commissioners, is not unconstitutional; said act simply abolishing the office of the court of county commisioners, thereby necessarily depriving the members of said court of their official incumbencies.

4. *Same; abolishment of office of statutory grant not infringement of Article XIV, of the Constitution of the United States.*—The abolishment by the legislature of an office created by it, which necessarily results in depriving the incumbent of such office, is not the taking of the property from the incumbent thereof without due process of law, within the meaning of Article XIV, of the Constitution of the United States.

APPEALS from the City Court of Birmingham.

Heard before the Hon. W. W. WILKERSON.

These two causes, involving the same legal questions, were submitted together. The first suit brought was that of Roberts & Son v. Kenneth F. Hawkins, county treasurer of Jefferson county. Roberts & Son, a corporation, filed a petition, asking for a *mandamus* to compel the defendant, K. F. Hawkins, as county treasurer of Jefferson county, to pay a warrant issued to said Roberts & Son by the Board of Revenue of said county. The petition alleged that said Hawkins declined to pay such warrant, solely on the ground that the act creating the Board of Revenue of Jefferson County was unconstitutional and void, and all the allegations of the petition

were admitted by the answer of the said Hawkins. The answer set forth, at great length, the grounds on which the act was supposed to be unconstitutional. Petitioner demurred to the answer on the grounds, substantially, that it appeared from the statements of the answer that all the averments of the petition were true and that the act creating the Board of Revenue was not open to any of the objections set up by the respondent, and that it was not invalid for any other reason. The court below sustained the demurrer of the petitioner; and respondent declining to plead further, judgment final was rendered, awarding the *mandamus* prayed for.

In the other case, William S. Morrow, L. D. Lacey and W. H. Crook brought an information in the nature of a writ of *quo warranto* against Paul H. Earle, Chambers McAdory, John B. Elliott, Hugh McGeever and William C. Ward, setting up that the defendants, under the name and style of the Board of Revenue of Jefferson County, were usurping and exercising certain public offices created and existing under the laws of the State, towit, the offices of Commissioners of the Court of County Commissioners in and for said County of Jefferson; that said defendants were claiming the right to act as such Board of Revenue under and by virtue of an act of the General Assembly of Alabama, which created said Board of Revenue and abolished the Court of County Commissioners of said County; but that said act was invalid for the reason that it violated certain provisions of the constitution of the State of Alabama, as well as that of the United States. The supposed particulars in which the act is in controversy of the State and Federal Constitutions are set out at length in the complaint.

The defendants demurred to the complaint or information upon several grounds, which presented in different phases the one proposition, that the act in question was not, in any wise, violative of either the State or Federal constitutions. This demurrer was sustained, and the relators declining to amend their declaration, judgment was rendered denying them relief prayed for. The other facts of the case are sufficiently stated in the opinion.

In the appeal in the case of Roberts & Son v. Hawkins, the respondent assigns as error the sustaining of

[Hawkins, Treas. v. Roberts & Son.]

the petitioners' demurrer to his answer, and the rendition of the final decree awarding the *mandamus* prayed for.

In the case of Morrow v. Earle, the relators assign as error the sustaining of the respondents' demurrer to the declaration or complaint and the rendition of final judgment denying the relief prayed for.

HEAD & WOOD, for appellants.—The act approved February 18, 1899, creating a Board of Revenue for Jefferson county and abolishing the court of county commissioners of said county, is violative of section 3 of Article VII of the Constitution of the State of Alabama, in that if enforced, it would have the effect of removing the then incumbents of said court from their then office, without judicial trial, as guaranteed by said Article. A public office, created by the legislature, and controlled by no constitutional restraints, may be abolished by the same power which created it, whenever its usefulness as a public agency is found to have ceased; and the incumbent, in such case, cannot complain that he has been deprived of a private right, in the loss of his office which results from the abolishment. Our contention, in this case, rests upon the great distinction between the principle so conceded, and the unconstitutional removal of an officer, attempted by whatsoever device or means employed—the office itself being essentially preserved.

It is settled by the decision of this Court in the case of *Nolen v. State*, 118 Ala. 154, (24 So. Rep. 251), that the constitutional method of removing an officer provided by Art. VII of the Constitution is exclusive. The principle of this decision is supported by many authorities exhaustive on the subject, and, indeed, is not controverted in this case.—*Commonwealth v. Williams*, 79 Ky. 42, (42 Am. Rep. 204); *State v. Hewitt*, 3 South Dakota 187, (44 Am. St. Rep. 788); Note on p. 45, 40 Am. St. Rep.; *State v. Duluth*, 53 Minn. 238, (39 Am. St. Rep. 595); *Hallgreen v. Campbell*, 82 Mich. 255, (21 Am. St. Rep. 577). These authorities also show abundantly that where by law removals must be made only for cause, though the tribunal nor mode of procedure for ascertaining the cause be provided, the power of removal is a judicial one, and **no removal by whatever form**

undertaken, whether professing to be for cause or not, is valid, except upon specific charges preferred, showing legal cause, and due notice to the officer, affording him reasonable opportunity to be heard in his defense, and judicial determination that the cause charged exists. From this it is clear, that any legislative enactment, or executive act done under it, which, if valid, would have the effect of removing an officer, the office still, in intent and legal effect, continuing—whether the reasons of the enactment, or act be stated or not—would be presumed to be an effort or undertaking to remove the officer *for cause,* and would be void as contravening the constitutional method of removal above appearing. Authorities *supra.* By these constitutional provisions a great personal right of the citizen is fixed in our political system. In kind it is of the highest order of constitutional benefactions, inferior only to others, it may be, in degree. The court will carefully and jealously guard and protect it from any encroachment; and if, in a legislative enactment, there lurks manifest evidence of encroachment—terms indicating probability that the citizen was denied his right—the Court will not be slow to extend its protecting arm. If indirection appears, it will not be slow to declare, that, "What cannot be done directly shall not be done indirectly." Let form be what it may, substance only will be regarded. The legislature no more than any other agency, will be permitted to deny the citizen his constitutional rights.—*Warner v. People,* 2 Denio 272, 43 Amer. Dec. 740; *People v. Albertson,* 55 N. Y. 50.

The thing within the intent of a constitution or a statutory enactment is, for all purposes, to be regarded as within the words and terms of the law. The restraints of the constitution upon the several departments, among which various powers of government are distributed, cannot be lessened or diminished by inference and implication; and usurpation of power, or the exercise of power in disregard of the express provisions of plain intent of the instrument, as necessarily implied from all its terms, cannot be sustained under the pretence of a liberal or enlightened interpretation, or in deference to the judgment of the legislature, or some sup-

posed necessity, the result of a changed condition of affairs.—1 Kent's Com. 162; *Barto v. Himrod,* 4 Seld. 483; *Taylor v. Porter,* 4 Hill, 144; *Warren v. People,* 2 Den. 272; *People v. N. Y. C. R. R. Co.,* 24 N. Y. 485; *Schenectady Observatory v. Allen,* 42 Id. 404; *Smith v. Ames,* 169 U. S. 446.

Section 1 of the amendment of the Constitution of the United States provides, among other things, that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." It will be observed that the second and third of these inhibitions do not merely ordain that no State shall make or enforce any law which shall deprive, etc., of these rights, but they are general, that no State shall by any means, whether by legislation or otherwise, deprive any person of these rights. This amendment has been often before the Supreme Court of the United States for construction, and it has been settled by that court, and is now the recognized rule, that where a person, whether citizen or alien, is deprived of life, liberty or property without due process of law, or denied the equal protection of the law by any arm or agency of a State, legislative, executive, or judicial, the act of deprivation or denial is a violation of these inhibitions of the Constitution. We need not enlarge this brief by reproducing the language of the Court settling this, beyond all dispute, as the true construction of the amendment.—*Green v. State,* 73 Ala. 26; *Ex parte Virginia,* 100 U. S. 339; *Neal v. Delaware,* 103 U. S. 270; *Yick Wo v. Hopkins,* 118 U. S. 356; *Gibson v. Mississippi,* 162 U. S. 579; *Scott v. McNeal,* 154 U. S. 34; *Chicago B. & Q. R. R. Co. v. Chicago,* 166 U. S. 234.

CABANISS & WEAKLEY, *contra.*—1. In the construction of a statute assailed on constitutional grounds, it is the duty of the court to adopt, if possible, such construction as will bring it within the range of the constitutional powers of the legislature, and not to impute to a coor-

dinate department of the government a violation of the fundamental law of the land. The court will always indulge the presumption that the act is constituional until clearly convinced to the contrary.—*Wilbur v. Mc-Cauley*, 63 Ala. 436; *Winter v. City Council of Montgomery*, 65 Ala. 403; *Zeigler v. S. & N. R. R. Co.*, 58 Ala. 594; *Edwards v. Williamson*, 70 Ala. 145; *State ex rel v. Rogers*, 107 Ala. 444.

2. The purpose and motives of legislators in supporting a statute can not be inquired into in order to make its validity depend upon the intention resulting from such inquiry. The judicial department can not institute an inquiry concerning the motives and purposes of the legislature, in order to attribute to it a design contrary to that clearly expressed or fairly implied in the bill. Endlich on Int. St., § 31; *Soon Hing v. Crawley*, 113 U. S. 703; *Fletcher v. Peck;* 10 U. S. 87; *Stevenson v. Colgan*, (Cal.) 14 L. R. A. 459; *Waterloo &c. Mfg. Co. v. Shanahan*, (N. Y.) 28 N. E. Rep. 358; *Koch v. Mayor*, (N. Y.) 46 N· E. 170; *Cumberland County v. Boyd*, 113 Pa. St. 52; *People v. Draper*, 15 N. Y. 545; *United States v. T. M. Freight Asso.*, 166 U. S. 290; *Ex parte Lambert*, 52 Ala 79; *Oldham v. Mayor*, 102 Ala. 537; *Pa. Railroad Co. v. Riblett*, 66 Pa. St. 164; *Ex parte Newman*, 9 Cal. 502; *Bank of Pa. v. Com.*, 7 Pa. St. 144; *Sudbury v. Cooper*, 33 Pa. St. 282.

3. The court of county commissioners being of legislative origin the legislature had the right to abolish it at pleasure before the expiration of the term of the commissioners. It also had the right to create in its stead a new and different tribunal, differently constituted, though exercising like powers, as well as additional powers. Whether the public good demanded the abolishment of the former office and the creation of the latter as a substitute therefor was a matter solely for legislative determination. *Ex parte Lambert*, 52 Ala. 79; *Barber v. Board of Revenue*, 53 Ala. 589; *Perkins v. Corbin*, 45 Ala. 103; *Oldham v. M. & A. of Birmingham*, 102 Ala. 357; *State v. Rogers*, 107 Ala. 450; *State v. Sayre*, 118 Ala. 1; *Hoke v. Henderson;* (N. C.) 25 Am. Dec. 703, note; 19 Am. & Eng. Enc. Law, 562; *State of Ind. v. Hyde* (Ind.) 13 L. R. A. 79; *State v. County Commis-*

*sioners* (Fla.) 3 Southern Rep. 193; *State v. Hoagland*
(N. J.) 16 Atl. Rep. 166; *Aikman v. Edwards,* (Kan.)
30 L. R. A. 149; *People v. Mahany,* 13 Mich. 500; *Lloyd
v. Smith,* (Penn.) 35 Atl. Rep. 199; *Koch v. Mayor,* (N.
Y.) 46 N. E. Rep. 170; *State v. Hudspeth,* (N. J.) 36
Atl. Rep. 662; *Wilson v. State,* (N. C.) 28 S. E. Rep. 554;
*Wilson v. State,* 169 U. S. 586; *Crenshaw v. U. S.,* 134
U. S. 39; *Stone v. Mississippi,* 101 U. S. 814; *Hall v. Wisconsin,* 103 U. S. 5.

4.   When the subject of an act is expressed in general
terms, whatever is referable to and cognate with the general subject, or whatever is necessary to a complete enactment in regard to it, or whatever results as a complement to the general expression, or as necessary to
the end in view, is included in and authorized by the constitutional provision that each law shall consist of but
one subject, which shall be clearly expressed in the title.
If an enactment assailed as being unconstitutional,
contains only one subject and only minor provisions
connected with and proper and necessary to the full
accomplishment of its object, the constitutional mandate
is satisfied, though there may be two subjects expressed
in the title.—*Judson v. City of Bessemer,* 87 Ala. 240;
*Gandy v. State,* 86 Ala. 20; *Fox v. McDonald,* 101 Ala.
51;*Ex parte M. & A. Birmingham,* 116 Ala. 189; *Ballentyne v. Wickersham,* 75 Ala. 539; *Ramagnano v. Crook,*
85 Ala. 226; *Walker v. Griffith,* 60 Ala. 361; *State v.
Harub,* 95 Ala. 176; *People v. Mahany,* 13 Mich. 500;
*State v. Sayre,* 118 Ala. 1.

5.   The constitutional provision with reference to the
enactment of laws by reference to others only applies to
those laws which are strictly amendatory or revisory.   If
a law is in itself complete and intelligible and original in
form, it does not fall within the meaning and spirit of
the Constitution.—*State v. Rogers,* 107 Ala. 444; *Ex
parte Pollard,* 40 Ala. 77.

6. If the several clauses of an act are perfectly distinct
and separable and are not interdependent, such part of
the act as is not suggested by the title will be rejected and
the rest of the act allowed to stand.—*Shehane v. Bailey,*
110 Ala. 308; *Harper v. State,* 109 Ala. 28; *State v.
Street,* 117 Ala. 203; *State v. Hartford Ins. Co.,* 99 Ala.

221; *Bradley v. State,* 99 Ala. 177.

7.   Mandamus is the proper remedy to compel payment by a County Treasurer of a warrant drawn on him by the proper authority, where he has sufficient funds on hand with which too pay such warrant.—*Wyker v. Francis* 120 Ala. 509.

HARALSON, J.—It is admitted on both sides,. that the question presented to us for review in each of the above entitled causes, is the constitutionality of the act, approved February 18, 1899, entitled "An act, to establish a Board of Revenue for Jefferson County and for the abolishment of the Court of County Commissioners of said county."

We allow the appellants to state their objections to the constitutionality of said act, in their own language, as we find them in their brief on file.

1.   "That it violates Art. VII, particularly section 3 thereof of the Constitution of the State of Alabama, in that, if enforced, it would have the effect of removing the then incumbents, members of the Commissioners Court, from their offices without judicial trial as guaranteed by said Article."

2.   "That it is violative of sections 1 and 2 of Art III of the Constitution of Alabama, distributing the powers of the government, in that, if enforced, the effect of the act would be usurpation by the legislature of judicial power."

3.   "That it is in violation of section 7 of Art. I of the Constitution of Alabama, either alone or considered in connection with the right secured said commissioners by said Article VII aforesaid, in that it would deprive the said Commissioners of their property without due process of law."

4.   "That it is violative of section 2, Article IV of the Constitution of Alabama, in that it contains two subjects, and that its subject is not clearly expressed in the title."

5.   "That it is in violation of so much of Art. XIV of the Constitution of the United States which provides that 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;' particularly the second and third of these inhibitions, more particularly the third."

1.   Collateral to the inhibitions of the Federal Constitution last referred to, counsel refer to a matter which, better than elsewhere, we may dispose of at this point, in order to clear the case of it, as not being a proper subject of consideration in determining the validity of the act in question.   They say: "Touching these inhitions, we hope to show further on, upon reaching this branch of the argument, in the light of ample adjudications of the highest federal court, first, that the second and third, especially the third, inhibition complained of, were committed by the legislature itself, as shown upon the face of the act, without regard to anything extrinsic; second, that they were committed, in a legal sense, by the Chief Executive of the State of Alabama, acting for and as an agency of the State, or by said Chief Executive and the legislature combined, as shown by the terms of the act itself and its approval in connection with extrinsic and contemporaneous history, competent to be considered, which will be presented to the court for its convenience in connection with this brief."   Attached to this brief is a printed pamphlet of 55 pages, purporting to contain the "Report on the books and accounts of the Court of County Commissioners by James G. Cowan, Assistant Examiner of Public Accounts, filed in the office of the Governor on Friday, the 20th day of January, 1899, together with the message of the Governor transmitting the same to the General Assembly."

Sections 1876-1879, inclusive, of the Code, relate to examiners of public accounts and their duties.   Section 1876 provides, that these officers,—the examiner and assistant examiners to be appointed by the Governor,—shall, under his direction, whenever required to do so, audit and examine the books and accounts and vouchers of the Secretary of State, Auditor, Treasurer and all other State officers, and also of the University of Alabama and other public institutions of the State.

It also provides, that, "The Governor shall have authority to direct and control the examiner, and when he deems it necessary, may require him to examine the accounts of any State or County officer, charged with the duty of collecting or disbursing any part of the public revenues." Section 1879, provides, that "The examiner and assistant examiners shall, from time to time, report to the Governor, under oath, the result of their examination, and the true condition and state of the books and accounts examined at the time of their examinations; such reports shall be public records. Before each session of the General Assembly, the Governor may cause seven hundred and fifty copies of such reports with such explanations and comments as the Governor may think proper, to be printed for the use of the General Assembly," etc.

In his report, the examiner specifies many instances of extravagance and reckless and improper expenditure of the monies of the county, which charges, the Governor incorporated in his message; adding among other things, in conclusion: "The remedy for this state of affairs is in your hands. At this, and previous sessions, Commissioners Courts have been abolished for unfaithfulness, against whom, not even one-half of the wrong-doing was even alleged that is here shown by the sworn report of a capable, honest and courageous official, and after giving the Commissioners every opportunity to explain. * *

* I recommend that you at once abolish this court and establish a Board of Revenue, permitting the voters at the next general election to elect members thereof." Attached also to this pamphlet, is another of 24 pages in length, purporting to be the report of the Senate committee on house bill to establish a board of revenue, for Jefferson county, etc., showing the proceedings of that committee and their report to the Senate

It is not pretended, nor can it be, that the Governor exceeded his constitutional and statutory authority in transmitting this report and message to the General Assembly. But counsel ask: "If it is not (by such extrinsic evidence) shown, that the Governor, by his participation, within the line of constitutional duty, and by the influence, which he otherwise exerted, as above

shown, contributed most materially to the production of this attempted legislation, with the demonstrated sole intent and purpose, not of abolishing the old and creating a new tribunal, but expelling these commissioners from their offices, upon his conviction of their unfitness, without giving them their constitutional right of trial?" etc.

If it be admitted that the Governor, by his action, indulged the purpose of procuring, by his influence, the abolition of this court and the consequent termination of the tenure of office of its members, because of his conviction that they were unsuitable longer to administer the financial affairs of the county, and that the State owed the duty to the county to substitute them with other persons free from the objections urged against them, inspired in such a course, by what he regarded as a faithful discharge of his official duty, in what, in this respect, let it be inquired, may the courts in determining the constitutional validity of the act in question, enter into a consideration of his conduct and that of the legislature, if influenced by him, in passing said act? All of this might have been intended by him and the legislature, separately or together, without a purpose, let it be added, to deprive the plaintiffs of any right of trial by jury or due process of law; for it must be presumed, that they each supposed the course recommended by the one and pursued by the other was in accordance with due and legal procedure. Whether or not the Governor exceeded the bounds of his prescribed legal authority in procuring the passage of said act, is not a matter of judicial inquiry in passing upon the question before us. Whether that act is constitutional or not, must, at last, depend upon its own inherent merits or demerits,— whether by its terms, on proper construction it is within the sanction, or violative of the fundamental law. The act itself is the last expression of the legislative will, and for its intent and meaning, we must look to the instrument itself. Like a written contract entered into by private individuals, after negotiations therfor, the writing contains their ultimate intentions and conclusions, in respect to the transaction; and all previous negotiations leading up to its execution being regarded as

merged therein. They have constituted the written instrument to be the authentic memorial of their contract, and because of this compact, the instrument must be taken as between them to speak the truth and the whole truth in relation to its subject matter.—*Robinson v. Mosely*, 93 Ala. 70. The diligence of counsel have laid at our hands many adjudications and the expressions of text-writers on this subject. Mr. Endlich, in referring to the motives of legislators in enacting a statute, observes: "Like the opinions expressed by legislators upon the passage of a statute, the motives and designs which actuated them in supporting it, cannot be inquired into by the court, in order to make the validity of an act depend upon the intention resulting from such an inquiry, even though, as in a *quo warranto*, the State be plaintiff."—Endlich on Int. of Statutes, § § 31, 32, and authorities there cited. The statute itself furnishes the best means of its own exposition; and if the sense in which the words were intended to be used can be clearly ascertained from its parts and provisions, the intention thus indicated will prevail without resorting to other means of aiding in its construction."—Sutherland on Stat. Const., § 237. The same authority again observes: "It would be dangerous in the extreme to infer from extrinsic circumstances, that a case for which the words of the instrument expressly provided, shall be exempt from its operation. * * * * When that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result is out of place. It is not the province of the courts to supervise legislation and keep it within the bounds of propriety and common sense."—Ib. 238.

In *Soon Hing v. Crowley*, 113 U. S. 703, the Supreme Court of the United States, in line with these text writers, on the same subject, say: "The rule is general with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the

country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be, to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements of their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile." We refrain from further quotation of authorities, on the question, many of which will be found cited in the brief of counsel for appellee, under their second proposition, but will add, that the principle announced seems to be of general if not universal acceptance.

2. The title of the act is, as we have seen, "To establish a Board of Revenue for Jefferson County, and for the abolishment of the court of county commissioners of said county." It is contended, that the act is violative of section 2, Art. IV of the Constitution, in that it contains two subjects, and that its subject is not clearly expressed in its title. This constitutional mandate is not, that two subjects shall not be expressed in the title, but that "Each law shall contain but one subject, which shall be clearly expresed in the title." A statute is not offensive to this section because it contains two subjects in its title, if only one of them is contained in the law. In such case the one not contained in the act will be rejected as surplusage. If an enactment contains one of two subjects expressed in the title, and also other minor provisions connected therewith, proper or necessary to the full accomplishment of its object the constitutional requirement is satisfied.—*Judson v. City of Bessemer*, 87 Ala. 240. Again, it is a familiar principle that where there are two statutes on the same subject, and the two are so inconsistent that there is not a field for the operation of both, and the latter does not in terms repeal the former, it will be repealed necessarily by implication by the later enactment. The Board of Revenue under this act, is composed, as now organized, of different persons from those that composed the Court of County Commissioners, and was open to be so composed, at the

time of its enactment. It is provided, that it "shall have all the jurisdiction, and all the powers, that are now or may hereafter be vested in the Courts of the County Commissioners of this State, and the several members of the Board of Revenue of Jefferson county shall respectively perform all the duties and services, and exercise all the powers which are, or may be required by law, of the several members of the Courts of County Commissioners." Furthermore, we note several fundamental differences between the new and the old law, apparent to any one on examination of them. We need not specify these changes. It thus appears that this Board is charged with the exercise of all the powers and duties of Courts of County Commissioners, with these additional powers, duties and limitations put upon them. The existence of the one is inconsistent with the existence of the other. If the new law is a valid enactment, it was as effectual to abolish the Court of County Commissioners without, as with, a provision to that effect in its body. The fact, therefore, that it contained such a provision was unnecessary to effect the abolishment of that court, and wholly innoxious under any view of the case. But, irrespective of this view, the position is entirely correct, and as well established as any proposition of law can be, that the provision abolishing the Commissioner's Court, and the reference to that matter in the title of the act, was referable and cognate to the general subject of creating the Board, that it is germane and a complement thereto, and was proper to make a complete enactment in regard to the subject-matter in hand. Neither the title nor the act refer to two, but merely to one legislative subject. It would be a useless consumption of time, to attempt to make this more plainly appear than we have heretofore done in numerous adjudications, some of them directly in point.—*State ex rel. Winter v. Sayre*, 118 Ala. 1; 24 So. Rep. 89; *Ex parte Mayor and Aldermen of Birmingham*, 116 Ala. 186; *State v. Rogers*, 107 Ala. 444; *Woolf v. Taylor*, 98 Ala. 254; *Barnhill v. Teague*, 96 Ala. 207; *Ballentyne v. Wickersham*, 75 Ala. 533.

3. It is objected again, that the said act is in violation of section 3, Art. VII, of the State Constitution,

providing for the impeachment and removal of county officers from office. The insistence of counsel for appellant seems to be, that this provision is exclusive of all other modes, possible to be ordained by the legislature the effect of which would be to deprive officers of their official incumbencies, even if of statutory creation. It is a familiar principle that all legislative power resides with the General Assembly, except wherein it is forbidden by the Constitution to be exercised, and with the legislature rests the creation of public offices not created by the constitution, which are deemed to be for the public good in the administration of the affairs of the State, and to abolish them at pleasure. In the absence of express inhibition in the Constitution, the power of the legislature in this respect is supreme. "If the Constitution creates an office, prescribes its duties, and the mode of appointment (of its incumbent), it is not competent for the legislature to create another officer to discharge the same duties, and direct his appointment in a different manner."— *Ex parte Lambert*, 52 Ala. 79.

In *Perkins v. Corbin*, 45 Ala. 103, it was held, that the General Assembly might abolish an inferior court, of its own creation, and that the abolition of the court abolished also the office of its judge and deprived him of further compensation. We have been referred to no authority holding to a different doctrine. Wherever it might seem to be questioned, reference was had to offices of constitutional and not of legislative or statutory creation.

The provision for the impeachment of State and County officers, other than those created by the constitution, is in no just sense an inhibition on the power of the legislature to abolish offices of its own creation. Such a contention has no other foundation, as it seems to us, than a supposed inhibition of the exercise of legislative power, rested upon a remote presumption of intention on the part of the framers of the constitution to forbid. There is no repugnancy between the provision for the impeachment of county officers as provided in the constitution, and the exercise by the legislature of the power of abolishing statutory offices and their incumbents with them. The mere existence of the one does not inhibit existence and exercise of the other. But, this

10

is not a new question with us. It has been passed on heretofore, after mature consideration. *Oldham v. the Mayor,* 102 Ala. 357, was a case where a sergeant of police brought suit to recover of the city of Birmingham the amount alleged to be due him on his salary. His office had been abolished by ordinance of the Mayor and Aldermen. The legislature had provided against the removal of policemen by the Board of Police Commissioners, except for cause after due trial. The right of recovery in the case was rested on a denial of the competency of the Mayor and Aldermen, during the term of plaintiff's office, to indirectly remove him from office and take away his salary, by resorting to the indirect method of abolishing his office. As to the legislative provision in the Police Commission Act, against the removal except for cause after due trial, we said: "But this has no application to the exercise of the power by the city to create and abolish offices. The judge of one of our city courts can not be removed for cause, without impeachment after trial, but that does not prevent the legislature from abolishing the court, and thereby deprive the judge of his office and salary.—*Perkins v. Corbin, supra.* Offices are abolished, it may be presumed, without reference to incumbents or their conduct,—though that might properly be a consideration—but because they are no longer necessary. Such statutory offices are not to be retained for the benefit of those who fill them, but alone for the public good." As directly supporting this authority, see *Phillips v. Mayor,* 88 N. Y. 245; *Butler v. Penn.,* 10 Howard, 402; *State v. Hyde,* 13 L. R. A. (Ind.) 79.

There is not, as supposed, any conflict between these cases, and the one of *Nolen v. The State,* 120 Ala. 154; 24 So. Rep. 251. There the office was retained and the officer removed. Here the office of the Court of County Commissioner was abolished and necessarily the term of office of the members of the court expired with it.

4. The decisions of this court are full to sustain the generally accepted doctrine, that offices are not property, or in the nature of contracts, but are public trusts, created for the benefit of the State; and, within constitutional limits, they may be regulated, controlled or abol-

ished, within and according to the supreme discretion of the legislature.—*Ex parte Lusk*, 82 Ala. 519, 522; *Ex parte Lambert, supra*. If this proposition be conceded, as it must be, and if we have succeeded in establishing that Art. VII of our Constitution providing for the impeachment of certain officers is not an inhibition upon the power of the legislature to abolish courts of statutory, and not of constitutional, creation, all that remains to be considered in this case is, whether or not the act in question is violative of Art. XIV of the Federal Constitution, in the mandate, that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny any person within its jurisdiction equal protection of the laws." Counsel say, in substance, that it is now the recognized rule, under Federal adjudications, that when a person is deprived of life, liberty or property without due process of law, or is denied equal protection of the law, then the act or deprivation or denial is a violation of these inhibitions of the constitution. We are at a loss, however, to understand how the act in question falls under the condemnation of this Article, unless it has deprived the members of the Court of County Commissioners of their property. There is no question of liberty involved, nor question of due process of law, since as we take it, it has been shown, that it was within legislative competency to abolish the court, leaving its members without offices longer to fill. And this seems to be the view taken by counsel, since they add: "Now let us inquire upon what grounds we charge that these commissioners were deprived of their property without due process of law, or denied the equal protection of the laws, in violation of the XIV amendment," etc., and proceed to argue at length the invalidity of the act on the grounds specified. But in what has gone before, all the objections brought forward against the validity of the act on this account, have been fully, if not satisfactorily met. "Equal protection of the laws is not denied to any person by a statute which is applicable to all persons under like circumstances, and does not subject the individual to an

[Hawkins, Treas. v. Roberts & Son.]

arbitrary power."—*Lowe v. Kansas,* 163 U. S. 81. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects all persons similarly situated, is not within the amendment."— *Barber v. Connally,* 113 U. S. 27; *Tinsley v. Anderson,* 171 U. S. 101; *Watson v. Nevin,* 128 U. S. 578; *Hays v. Missouri,* 120 U. S. 68.

The appellants accepted their offices with the knowledge that they were statutory, and, like all such offices, were within the uncontrolled discretion of the legislature as to their continuance, and they knew that in past years many courts of county commissioners had been abolished by special act of the legislature and boards of revenue created in their stead, and that all others were liable to share the same fate. Under the constitution, they are all liable to go as this one went, and therefore, if for reason appearing good, the legislature abolished this one, and held the others in reserve for similar action, when, if ever, in their judgment the proper time arrives, the act in question can not be said to fall within the sphere and partake of the nature of class legislation. Again, if the act sought to be condemned was not violative of the State Constitution. it must follow that plaintiffs have not been deprived of any rights without due process of law, or if any right guaranteed to them by the Federal Constitution. In *Wilson v. The State,* 169 U. S. 586, the fact was, that Wilson, a Railroad Commissioner of North Carolina, had been removed form office by the Governor, and it was insisted that the proceeding and the statute under which his removal was effected, were in violation of the 14th amendment, because the Governor refused to produce, on demand of the plaintiff, the evidence against him, and to allow him an opportunity to confront his accusers and cross-examine the witnesses. The North Carolina court ruled that Wilson had been lawfully suspended from office, and on appeal to the Supreme Court of the United States, that judgment was affirmed. The question for review as stated by the court was, whether the State, through the action of the Governor and judiciary, had

[Pullman Palace Car Co. v. Harrison.]

deprived Wilson of his propery without due process of law, or denied to him the equal protection of the laws, and it was held that he had not been deprived of any rights guaranteed to him under the Federal Constitution by reason of the proceedings before the Governor. It was said, that "no such fundamental rights (indispensable to the liberty of the citizen) were involved in the proceedings before the Governor. In its internal administration, the State (so far as concerns the Federal Government) has entire freedom of choice in the creation of an office for purely State purposes, and of the terms upon which it shall be held by the person filling the office. And in such matters the decision of the State court, that the proceeding by which a State officer has been suspended or removed from office was regular and was under a constitutional and valid statute, must generally be conclusive in that court." See also *Allen v. Georgia,* 166 U. S. 138, 140.

We find no error in the rulings of the court below in either case, and the judgments therein are severally affirmed.