## DODD, MEAD & CO., Inc., v. UNION GRADED SCHOOL DISTRICT No. 1.

No. 21181. Sept. 26, 1933.

Rehearing Denied Oct. 17, 1933.

Maris & Maris, for plaintiff in error.

Sam K. Sullivan, Neal A. Sullivan, and R. J. Shive, for defendant in error.

BAYLESS, J. This is an appeal from the district court of Kay county. About December 4, 1924, union graded school district No. 1, of Kay county, Okla., hereinafter called school district, through two of its school board members, executed a contract with Dodd, Mead & Company, Inc., a corporation, hereinafter called plaintiff, reading as follows:

"Please deliver by express, charges prepaid, one set of the New International Encyclopaedia, Second Edition, latest printing, complete in 25 volumes (two new volumes, 24 and 25, included free), in Library Buckram Binding, at $168; (cross out binding not wanted): payable as follows. (Fill in terms desired)

"One Year Plan-Full price in one year.

"Title and ownership shall remain in Dodd, Mead & Company, Inc., until paid."

The books were delivered, but no part of the purchase price was paid. Suit was brought in a court of a justice of the peace of that county, default judgment was rendered in favor of the plaintiff, and an appeal was taken to the district court of said county. The case was tried by the judge without a jury. The plaintiff's evidence consisted of the contract, above quoted, admitted in evidence over the objection of the school district, and the stipulation that the books had been received but not paid for. The plaintiff then rested. The school district introduced in evidence a letter received by it from the plaintiff and a certified copy of the "financial statement for the fiscal year beginning July 1, 1923, and ending June 30, 1924; and estimated income and needs for current expense for the fiscal year beginning July 1, 1924, and ending June 30, 1925, as required by sec. 2, ch. 226 (H. B. 418) Laws 1917," and rested. The court thereupon rendered judgment for the school district.

Two contentions are raised, one by the plaintiff and one by the school district, the plaintiff contending that the library appropriation for the fiscal year of 1924-25 of $150 could be applied upon this account and the balance of $18 remaining unpaid could be paid from the "sundries" appropriation of $100. The plaintiff says that the financial statement introduced in evidence shows that these two appropriations totaled $250, and that the burden of proof was upon the school district to show that this money could not be so used or that it had been used for other purposes, and that there was not enough in both of said funds to pay the plaintiff's claim. It further discusses the inequity of permitting the school district to receive the books and keep them without paying for them. The school district contends that the contract was void because it attempted to create an indebtedness beyond the fiscal year, and that the contract price for these books was in excess of the appropriation for library purposes for said year. The school district further contends that money appropriated for "sundries" could not be used to pay the balance in excess of the appropriation for items purchased, for which a specific appropriation had been made. All of the argument advanced by the parties covers these contentions.

We will not discuss these matters, for in our judgment the company failed to make out a cause of action in the matter as prescribed by chapter 106, Session Laws 1925.

The subject of this act is "Judgments Against Municipalities." The first section of the act defines the term "municipalities" to include school districts. Sections 2 and 3 of said act read as follows:

"Section 2. Before final judgment in any suit based on contract shall be rendered against any municipality by any court of any county in the state of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:

"1. An itemized statement of the bonded indebtedness of said municipality.

"2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

"3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor;

"(a) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;

"(b) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of 'estimated income'; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year:

"(c) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application.

"Appeals from the judgment of the court shall be allowed as provided by law, upon the giving of a bond for cost and damages in such sum as the court shall require; provided, that the county attorney of any county may, without the consent of the board of county commissioners of said county, take an appeal from said judgment on behalf of said county and without bond for costs and damages.

"Section 3. No judgment shall be rendered against any municipality by any court until the provisions of section 2 hereof have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect."

This act does not say specifically upon whom rests the burden of showing the matters required to be shown. But a practical application of this act makes it apparent that the one seeking a judgment against a municipality upon a contract must discharge this burden, for the plain language of the act is that no judgment can be rendered until such showing is made. In Excise Bd. v. Gulf Pipe Line Co., 156 Okla. 103, 9 P. ((2d) 460, it is said:

"It would then have been necessary for the claimant to present the proof required by chapter 106, supra, before final judgment could be entered. The reason for requiring such proof is apparent. It is that the proper officers, having custody of the records showing the condition of the funds out of which the indebtedness is payable, present the information to the court in the manner prescribed by the statute."

The effect of this act is not to make the necessity of this showing a defense: it is rather a condition precedent to the judgment or a rule of evidence.

Some contention may be made that this application of the act has the effect of being unconstitutional and void as impairing the obligation of the plaintiff's contract. We do not believe this to be the case, for it is said in 10 R. C. L. 683, sec. 6:

"The general power of the Legislature to prescribe rules of evidence and methods of proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are. So long as the Legislature, in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defense and to submit all the facts to the jury to be weighed by them, upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds. No person or corporation has a vested right in the rules of evidence. They pertain to the remedies provided by the state for its citizens, and do not constitute a part of any contract. They are subject to control and modification by the Legislature, whether affecting proof of existing rights or rights subsequently acquired, and changes in them may be made applicable to existing causes of action."

Mr. Justice White, in L. & N. R. Co. v. Schmidt, 177 U. S. 230, 44 L. Ed. 747, said:

"It is no longer open to contention that the due process clause of the Fourteenth Amendment to the Constitution of the United States does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided, in the proceedings which are claimed not to have been due process of law, the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend. Iowa Cent. Ry. Co. v. Iowa, 160 U S. 389, 16 S. Ct. 344, 40 L. Ed. 467; Wilson v. North Carolina, 169 U. S. 586, 18 S. Ct. 435, 42 L. Ed. 865."

We therefore hold that the evidence submitted to the district judge of Kay county, Okla., falls far short of the showing required to be made, and for that reason the judgment of the trial court is correct. If this showing had been made in the manner prescribed by this act, it is possible that some of the questions discussed by the plaintiff would have resolved themselves in its favor; perhaps against it. We do know the showing was not made, and for this reason the judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, BUSBY, and WELCH, JJ., concur. ANDREWS, J., absent.