Jimmie KUHN, et al., Plaintiffs,

v.

William C. THOMPSON,
et al., Defendants.

Civil Action No. 03–F–1136–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 29, 2004.

Brian R. Chavez–Ochoa, Valley Springs, CA, for plaintiffs.

John J. Park, Jr., Charles B. Campbell, Office of the Attorney General, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

## I. INTRODUCTION

This cause is before the Court on the Motion to Dismiss (Doc. # 8) filed on be-

---

1. The individual plaintiffs in this case are: Jimmie Kuhn, Barbara Kuhn, J. Kenneth Potts, Sarah Potts, and Eilese Warren. They are referred to collectively in this Memorandum Opinion as "Plaintiffs."

2. The individual defendants in this case are: William C. Thompson, J. Scott Vowell, John

half of the defendants to this action on November 20, 2003. Plaintiffs,[1] five registered voters from the State of Alabama who voted for Roy Moore (hereinafter "Moore") when he was elected to the position of Chief Justice of the Alabama Supreme Court, filed this action pursuant to 42 U.S.C. § 1983 (hereinafter "Section 1983") and 42 U.S.C. § 1973 (hereinafter "Section 2 of the Voting Rights Act"). Plaintiffs admit that their legal theories are novel, but nevertheless, they contend that the members of the Court of the Judiciary, who are the named defendants[2] to this action, violated Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution and under Section 2 of the Voting Rights Act by removing Moore from his position as the Chief Justice of the Supreme Court of Alabama. By this action, Plaintiffs seek declaratory and injunctive relief. Specifically, Plaintiffs seek an injunction requiring Defendants to reinstate Moore to the position he occupied on the Supreme Court of Alabama prior to November 13, 2003, and a declaration that the decision to remove Moore violated Plaintiffs' rights. Offering a variety of bases, Defendants urge the Court to dismiss the action. For the reasons set forth in this Memorandum Opinion, the Motion to Dismiss is due to be GRANTED.

## II. JURISDICTION AND VENUE

The parties have not disputed that this Court has subject matter jurisdiction over this case which asserts claims pursuant to two federal statutes. *See* 28 U.S.C.

---

V. Denson, Robert G. Kendall, James L. North, John J. Dobson, William D. Melton, Sam Jones, and Sue McInnish. They are referred to collectively in this Memorandum Opinion as "Defendants." Plaintiffs have sued each defendant in his or her official capacity only. Compl. at ¶ 9.

§ 1331. Additionally, Defendants have not argued that the Court does not have personal jurisdiction over each of them. There is no dispute over whether venue is appropriate.

### III. MOTION TO DISMISS STANDARD

■ A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The Court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Moreover, the Court is aware that the threshold that a complaint must meet to survive a motion to dismiss is "exceedingly low." *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

### IV. BACKGROUND

#### A. FACTUAL BACKGROUND[3]

In November of 2000, the voters of Alabama elected Moore to serve a six-year term as Chief Justice of the Supreme Court of Alabama. Compl. at ¶ 10. During the course of Moore's campaign he pledged that if elected he would place the Ten Commandments within the Alabama State Judicial Building. Compl. at ¶ 8. Plaintiffs allege that they voted for Moore and that they were aware of his pledge to install the Ten Commandments within the Alabama State Judicial Building. *Id.* On January 15, 2001, Moore was sworn in as Chief Justice and began to serve the term to which had been elected. Compl. at ¶ 10.

On August 1, 2001, Moore installed a large granite monument he had designed in the rotunda of the State of Alabama Judicial Building. *Id.* Prior to its installation, Moore had the monument inscribed with the Ten Commandments and various religious quotations. *Id.* Offended by the monument, certain individuals brought suit in the United States District Court for the Middle District of Alabama against Moore in his official capacity, claiming that Moore's placement of the monument in the rotunda violated the Establishment Clause of the First Amendment of the United States Constitution. *Id.* The suits, which were consolidated, against Moore sought the removal of the monument from the rotunda. *Id.*

The cases against Moore proceeded to trial. Compl. at ¶ 11. After several days of testimony, including testimony from Moore himself, the court ruled in favor of those suing Moore and entered a permanent injunction, which enjoined Moore from continuing to fail to remove the monument from the rotunda. *Id.* Moore appealed to the Eleventh Circuit Court of Appeals, which affirmed the decision below. *Id.* After Moore's unsuccessful appeal to the Eleventh Circuit Court of Appeals, the court set an August 20, 2003 deadline for Moore to comply with the injunction entered in the case. *Id.* Moore publicly announced that he had no intention of removing the monument from the rotunda. The court imposed deadline for the removal of the monument passed and

---

**3.** Due to the procedural posture of this case, the facts set forth herein are taken from the allegations of the Complaint.

the monument remained in the rotunda. *Id.*

The State of Alabama has developed a comprehensive system to regulate its elected judicial officials. Compl. at ¶ 9. The Alabama Constitution charges the Supreme Court of Alabama with the responsibility for developing and implementing the ethical rules that govern all state judges. Ala. Const. of 1901, amend. 328 § 6.08(c). The Alabama Constitution vests enforcement of the Alabama Canons of Judicial Ethics in the Judicial Inquiry Commission.[4] If a majority of the Judicial Inquiry Commission determines that a reasonable basis for an ethics violation exists, the Judicial Inquiry Commission may file a complaint with the Court of the Judiciary.[5] Once a complaint is filed, a charged judge is temporarily disqualified from judging until the Court of the Judiciary rules on the complaint, but continues to draw his salary. Ala. Const. of 1901, amend. 328 § 6.19. The Court of the Judiciary operates much like other state trial courts and has the authority to hear complaints filed by the Judicial Inquiry Commission and discipline a judge for violating a Canon of Judicial Ethics. The discipline may include removal from office, suspension without pay, or censure. Ala. Const. of 1901, amend. 581 § 6.18(a). Appeal from the Court of the Judiciary is directly to the Supreme Court of Alabama. Ala. Const. of 1901, amend. 581 § 6.18(b).

On August 22, 2003, the Judicial Inquiry Commission filed a complaint against Moore with the Alabama Court of the Judiciary. Compl. at ¶ 12. By operation of law, Moore was suspended, with pay, upon the filing of the complaint. *Id.* Moore's suspension occurred after he had served slightly less than two years of the six-year term to which he was elected in 2000.

The Judicial Inquiry Commission's complaint alleged that Moore had violated a number of the Canons of Judicial Ethics by his refusal to comply with a valid court order. Moore answered the complaint against him, denying the allegations and raising other challenges to the complaint. *Id.* On November 12, 2003, the Alabama Court of the Judiciary convened for a public trial of the charges against Moore.[6] Compl. at ¶ 13. On November 13, 2003, the Alabama Court of the Judiciary rendered a unanimous verdict in which it found that Moore's conduct violated the

---

4. Under the Alabama Constitution, the Judicial Inquiry Commission consists of one appellate judge appointed by the Alabama Supreme Court, two circuit court judges appointed by the Circuit Judges' Association, three non-lawyers appointed by the Governor and confirmed by the Senate, one district judge appointed by the Lieutenant Governor and confirmed by the Senate, and two members of the state bar appointed by the governing body of the Alabama State Bar. Ala. Const. of 1901, amend. 581 § 6.17(a).

5. Under the Alabama Constitution, the Court of the Judiciary consists of one appellate judge appointed by the Alabama Supreme Court who serves as Chief Judge, two circuit court judges selected by the Circuit Judges' Association, two non-lawyers appointed by the Governor and confirmed by the Senate, one non-lawyer appointed by the Lieutenant Governor and confirmed by the Senate, one district judge selected by the District Judges' Association, and two members of the state bar selected by the governing body of the Alabama State Bar. Ala. Const. of 1901, amend. 581 § 6.18(a).

6. Although the proceedings against Moore before the Court of the Judiciary were public proceedings, there was not unlimited seating in the courtroom and there was an application process for passes for the seating in the courtroom. Some spectators, including some Plaintiffs in this case, wished to sit in the courtroom, but were not allowed to do so because they did not have a pass. The proceedings were memorialized on videotape. Copies of the videotape are available for the public to purchase.

Alabama Canons of Judicial Ethics and removed him from his position as Chief Justice of the Alabama Supreme Court. Compl. at ¶ ¶ 13 & 15.

On December 10, 2003, Moore appealed the decision of the Court of the Judiciary to the Supreme Court of Alabama. (Doc. # 21). According to his Notice of Appeal, Moore's appeal questions whether the decision of the Court of the Judiciary was supported by clear and convincing evidence and whether the Court of the Judiciary violated Moore's procedural and substantive rights under the United States Constitution and the Alabama Constitution. (Doc. # 21). As of the date of this Memorandum Opinion, Moore's appeal is pending before a specially convened panel of judges because the current justices of the Alabama Supreme Court recused themselves from hearing Moore's appeal. Briefing of the appeal is on-going.

## B. PROCEDURAL HISTORY

Plaintiffs filed this action on November 20, 2003. In their Complaint, Plaintiffs alleged that Defendants' removal of Moore from his elected position as Chief Justice of the Alabama Supreme Court violated the fundamental right to vote of all citizens in the State of Alabama and that it had a particularly severe impact on African–American, Hispanic, and Asian–American voters.[7] Specifically, Plaintiffs objected to the procedures under the Alabama Constitution which allow a body of persons not directly elected by the citizens of the state, namely the Court of the Judiciary, to remove an elected official, namely Moore. Plaintiffs alleged that the removal of Moore prior to the end of the term to which he was elected would be appropriate only if conducted through an impeachment process, whereby a body directly elected

by voters would be called upon to determine Moore's fate. Plaintiffs also took issue with the fact that the Court of the Judiciary conducted Moore's trial in such a manner as not to allow all voters who so desired to be physically present and further argue that conducting the hearing in Montgomery required voters of color to travel potentially great distances to attend Moore's trial.

Brought pursuant to Section 1983, Plaintiffs' first claim for relief alleged a violation of rights under the Fourteenth Amendment of the United States Constitution to "equal treatment and equal dignity" of voters residing in the State of Alabama. Compl. at ¶ 19. Plaintiffs alleged that the removal of Moore deprived them of their fundamental right to vote and kept the individual votes of Plaintiff, presumably cast for Moore, from having any significance or equality. Compl. at ¶ 20. Plaintiffs' second claim for relief was a claim pursuant to the Voting Rights Act. Specifically, Plaintiffs alleged that Defendants' removal of Moore ran afoul of the Voting Rights Act's prohibition of the denial or abridgement of the right to vote on account of race, color, or linguistic status. Compl. at ¶ 23.

To correct and remedy what they claim were consequential violations of voters' rights under the Fourteenth Amendment to the United States Constitution and the Voting Rights Act, Plaintiffs demanded an injunction requiring the reinstatement of Moore to the position of Chief Justice of the Alabama Supreme Court and also sought a declaration that the removal of Moore had violated their rights.

Along with the Complaint for Injunctive and Declaratory Relief, Plaintiffs filed an application for a temporary restraining or-

---

7. Plaintiffs characterized the removal of Judge Moore as "a substantial disenfranchisement of voters" which "had an especially severe impact on people of color." Compl. at ¶ 7.

der and a petition for a preliminary injunction. Defendants filed the Motion to Dismiss presently before the Court. By this motion, Defendants have urged the following bases for dismissal of this action: judicial immunity, *Younger* abstention, federalism and comity, lack of standing, and failure to state a claim upon which relief can be granted.

After a telephonic hearing on the application for a temporary restraining order, the Court entered an Order denying the application. The Court set the application for preliminary injunction for a hearing on December 22, 2003 and approved the briefing schedule to which the parties had agreed for briefing of the application for preliminary injunction and the Defendants' motion to dismiss.

On December 22, 2003, this Court convened to hear oral argument on the motion to dismiss. While Plaintiffs did not seek to amend the Complaint, Plaintiffs did advance a new theory of the case at oral argument. Nowhere in the Complaint did Plaintiffs make a facial challenge to the validity of Amendment 581 of the Alabama Constitution, pursuant to which Defendants removed Moore from office. Instead, it is quite clear that the Complaint challenged the actions of the Court of the Judiciary pursuant to Amendment 581 when they took specific actions with respect to removing Moore. Nevertheless, at oral argument Plaintiffs' counsel claimed for the first time that "this case is not about [Moore]" and does indeed contain a facial challenge to the constitutionality of Amendment 581 of the Alabama Constitution. It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss.[8] Consequently, this Court will address the arguments raised in the motion to dismiss as they apply to the claims Plaintiffs articulated in the Complaint.[9]

## V. DISCUSSION

### A. JUDICIAL IMMUNITY

Defendants argue that the doctrine of judicial immunity bars Plaintiffs' claims pursuant to Section 1983 [10] because it is clear from the allegations of the Complaint that all of the actions taken by Defendants which Plaintiffs challenge in this suit were performed in the course of Defendants' capacities as members of the Alabama Court of the Judiciary. Having considered

---

8. *See e.g., Commonw. of Pa. v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3rd Cir.1988); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

9. The Court further finds that even if the Complaint could somehow conceivably be construed as containing a facial challenge to Amendment 581 of the Alabama Constitution, it is due to be dismissed because Defendants are not the proper defendants for such a challenge. *See, e.g., Bauer v. Tex.,* 341 F.3d 352 (5th Cir.2003) (affirming dismissal of suit against judicial official pursuant to Section 1983 because no case or controversy existed between litigant seeking declaration that law was unconstitutional and judge who acted within his adjudicatory capacity in issuing an order under the law the litigant wished to challenge); *Brandon E. ex rel. Listenbee v. Reynolds,* 201 F.3d 194 (3rd Cir.2000) (affirming dismissal of action against state court judges challenging the constitutionality of a state law under which the judges adjudicated cases because judges were not the proper parties to defend the constitutionality of the law); *In re Justices of the Sup. Ct. of P.R.,* 695 F.2d 17 (1st Cir.1982) (holding that judges are not the proper parties to an action brought pursuant to Section 1983 challenging the constitutionality of a law under which the judges act as neutral adjudicators and dismissing the action against them for failure to state a claim for which relief can be granted).

10. Defendants provide no authority for the application of the judicial immunity doctrine as a bar to Plaintiffs' claims pursuant to the Voting Rights Act.

the application of judicial immunity to this action, the Court finds that judicial immunity bars some, but not all, of Plaintiffs' claims.

Plaintiffs do not dispute that Defendants are judicial officers sued for actions taken in their judicial capacities. Instead, Plaintiffs cite *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). In *Pulliam* the United States Supreme Court held that a judge was not absolutely immune from a suit pursuant to Section 1983 for prospective injunctive relief. Because Plaintiffs seek declaratory and injunctive relief rather than damages, they argue that judicial immunity presents no bar to this action.

What Plaintiffs' argument overlooks, however, is the fact that after the Supreme Court decided *Pulliam*, Congress responded by amending Section 1983 and restoring judicial immunity from suits brought pursuant to Section 1983 for injunctive relief. As amended, Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.* For

purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. 42 U.S.C. § 1983 (emphasis added).

■ Plaintiffs have neither alleged nor argued that the actions of the Court of the Judiciary violated any declaratory decree. Thus, unless "declaratory relief was unavailable" Section 1983 specifically provides that injunctive relief is not available against judicial officers for acts or omissions taken in their judicial capacity. While Plaintiffs have not alleged that declaratory relief was unavailable and did not make that argument in their written opposition to the motion to dismiss, Plaintiffs did attempt to argue at the hearing on the motion to dismiss that declaratory relief was unavailable to them prior to the initiation of the prosecution of Moore.

This Court is not persuaded that declaratory relief was unavailable to Plaintiffs.[11] At any point in the many years since the electorate of the State of Alabama voted to amend the Alabama Constitution to give the Court of the Judiciary the power to remove elected judges for violations of the Alabama Canons of Judicial Ethics, Plaintiffs could have filed an action seeking a declaration that the removal provision violated their rights under the United States Constitution. Moreover, rather than filing this very action, Plaintiffs could have filed an action seeking a declaration that Section 581 of the Alabama Constitution works a deprivation of rights granted by the United States Constitution and is due to be declared unconstitutional.[12]

■ Where a plaintiff does not allege and the record does not suggest that the judicial defendant violated a declaratory

---

11. Indeed, Plaintiffs seem to acknowledge the availability of declaratory relief by seeking it in this very action.

12. Such an action would need to have been brought against different defendants than the ones named in this suit and could only seek declaratory relief or *prospective* injunctive relief.

decree or that declaratory relief was unavailable, judicial immunity requires dismissal of claims against judicial officers for actions taken in their judicial capacity even when the claims seek prospective injunctive relief. *See, e.g.,* 42 U.S.C. § 1983; *Ackermann v. Doyle,* 43 F.Supp.2d 265, 272 (E.D.N.Y.1999) (dismissing claims for injunctive relief against judicial officers made pursuant to Section 1983); *Kampfer v. Scullin,* 989 F.Supp. 194, 201–02 (N.D.N.Y.1997) (same). Consequently, Plaintiffs may not proceed pursuant to Section 1983 with a claim for injunctive relief against the judicial officers who are the sole defendants to this action. To the extent that Defendants' Motion to Dismiss seeks to dismiss all of Plaintiffs' claims for injunctive relief pursuant to Section 1983, it is due to be GRANTED.

Moreover, Plaintiffs seek expenses, costs, fees, and other disbursements associated with the filing and maintenance of this action, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988. However, when Congress amended Section 1983 to reverse *Pulliam,* and restore judicial immunity, it also amended Section 1988 which now provides that

> [i]n any action or proceeding to enforce a provision of sections ... 1983 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.*

42 U.S.C. § 1988(b) (as amended; emphasis added). Consequently, where as here, it is undisputed that the judicial officers made defendants to this action are being sued for actions taken in their judicial capacity and there is no allegation that the judicial officers' action was clearly in excess of their jurisdiction, Plaintiffs cannot recover attorney's fees or costs. Consequently, the Motion to Dismiss is due to be GRANTED to the extent that Plaintiffs seek an award of attorney's fees or costs.

Application of the judicial immunity doctrine to this case does not preclude Plaintiffs from pursuing all of their stated claims. Consequently, to decide the Motion to Dismiss, the Court also examines some of the other grounds argued in Defendants' motion.

## B. *YOUNGER* ABSTENTION

By their claims in this action, Plaintiffs seek to directly interfere with the prosecution of Moore in state disciplinary proceedings by asking this Court to enter an injunction reinstating Moore to the position from which he was removed by the Court of the Judiciary and to declare that the Court of the Judiciary's decision to remove Moore violated rights purportedly conferred upon Plaintiffs by the Fourteenth Amendment to the United States Constitution and the Voting Rights Act. Because of this demand for direct interference with an ongoing state proceeding, Defendants argue that this action must be dismissed under the *Younger* abstention doctrine. The Court agrees.

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny reflect "the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases—already pending in state court—free from federal court interference." *Butler v. The Ala. Judicial Inquiry Comm'n,* 245 F.3d 1257, 1261 (11th Cir.2001) (*"Butler I"*). Normally, when a federal court is asked to enjoin pending proceedings in a state court, it should decline to issue such an injunction on the basis of *Younger* abstention. *Id.*

Plaintiffs argue that *Younger* abstention does not apply for several reasons. First, Plaintiffs claim that there is no pending state court action because Moore is not seeking relief from the final judgment of the Alabama Court of the Judiciary. Second, Plaintiffs argue that *Younger* should not apply because the proceedings against Moore were not criminal proceedings, but rather proceedings to adjudicate violations of the Alabama Canons of Judicial Ethics. Third, Plaintiffs argue that abstention is unwarranted because this case presents extraordinary circumstances where the danger of irreparable loss is both great and immediate. Fourth, Plaintiffs argue that *Younger* abstention would bar this action if Moore was the plaintiff, but does not bar Plaintiffs' claims especially because they do not face possible prosecution under the provisions of the Alabama Constitution they seek to challenge. Finally, Plaintiffs argue that *Younger* abstention should not apply because the Court of the Judiciary cannot fashion a remedy which would resolve the federal claims brought forth by Plaintiffs in this action.

Plaintiffs raised these arguments prior to learning that Moore was going to file an appeal of the decision of the Court of Judiciary to remove him from office. Moore's subsequent filing of an appeal of the decision of the Court of the Judiciary undermines Plaintiffs' contention that there is no pending state court proceeding. The Court finds that the proceeding against Moore is an on-going proceeding.

Plaintiffs' second argument against the application of *Younger* abstention is contrary to established law. *Younger* abstention is not limited to federal actions seeking to enjoin state criminal proceedings as Plaintiff has argued. Addressing the *Younger* doctrine in the context of state attorney disciplinary proceedings, the United States Supreme Court explained that "[t]he importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Analogizing to and extending the holding of *Middlesex County*, the Eleventh Circuit Court of Appeals held that *Younger* abstention can apply to federal cases, like this one, seeking to enjoin state disciplinary proceedings for judicial officers. *See Butler v. The Ala. Judicial Inquiry Comm'n*, 261 F.3d 1154, 1158–60 (11th Cir.2001) ("*Butler II*") (applying *Younger* abstention to bar federal court action seeking to have canon of judicial ethics under which judge faced charges in the Court of the Judiciary declared unconstitutional under the United States Constitution).[13] Thus, Plaintiffs'

13. The Court finds the *Butler II* decision relevant and applicable to the extent that it relates to the issue of the applicability of *Younger* abstention in the context of a state disciplinary proceeding against a judicial officer. Defendants' argument that *Butler II* represents an example of a case in which *Younger* abstention applied to bar a federal action brought by persons who were not parties in the underlying state action is not persuasive. It is true that the *Butler* case involved two plaintiffs other than Justice See, the judge who was facing the disciplinary action in the underlying state proceeding. The holding of the *Butler* case, however-

er, was that the *Younger* doctrine required the district court to abstain from deciding the claims urged by Justice See. The *Butler* case did not address the appropriateness of *Younger* abstention for the claims of the other two plaintiffs, which were later dismissed by the district court on other grounds. Indeed, in an unpublished decision in the *Butler* case the Eleventh Circuit made it quite plain that there was no contention in that case that *Younger* abstention required the dismissal of the action insofar as it related to the plaintiffs other than Justice See. *See Butler v. The Ala. Judicial Inquiry Comm'n*, Feb. 4, 2002 Order on Pet. for Reh'g En

second objection to the application of *Younger* abstention to this case is wholly without merit.

■■■■ Plaintiffs' remaining objections to the application of *Younger* abstention are similarly unavailing when the relevant case law is applied to the facts of the present case. The Supreme Court has set out three benchmarks to guide the application of *Younger* abstention: (1) whether state proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there exists an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County*, 457 U.S. at 432; 102 S.Ct. 2515. It is clear that the proceedings against Moore in the Court of the Judiciary constitute a state judicial proceeding. *See Butler I*, 245 F.3d at 1262. Moore has brought his own challenges to the decision of the Court of the Judiciary through a direct appeal of his removal pursuant to Alabama law. Given the pendency of Moore's appeal, it is equally clear that the state judicial proceeding is ongoing. Consequently, the first benchmark for the application of *Younger* abstention is met. Moreover, as explained in *Butler I*, it is clear that judicial disciplinary proceedings such as those which Plaintiffs would enjoin, implicate important state interests, and the second benchmark for the application of *Younger* abstention is satisfied. *Id.*

■■■■ Thus, the only real issue is whether there is an adequate opportunity in the state proceedings for Plaintiffs to raise constitutional challenges. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex County*, 457

U.S. at 431, 102 S.Ct. 2515. Thus, the Plaintiffs have the burden of establishing that the state procedures are inadequate. *Butler I*, 245 F.3d at 1262. The Court finds that Plaintiffs have failed to meet their burden.

Essentially, Plaintiffs argue that *Younger* abstention should not apply to this case because Moore, the person against whom the state proceeding sought to be enjoined is pending, is not a party to this case. Attempting to distinguish contrary authority Defendants cite, Plaintiffs contend that *Younger* abstention should not bar their claims because they are not the parties facing prosecution in the state court proceedings in which they seek to have this Court interfere by issuing an injunction. Additionally, Plaintiffs claim that this case presents extraordinary circumstances in which *Younger* abstention should not apply because they contend that the Court of the Judiciary cannot fashion a remedy which would significantly affect their claims in this action.

■■■■ Certainly, it is quite clear that *Younger* abstention would likely bar an action brought by Moore in federal court seeking to enjoin the disciplinary actions against him in state court. Indeed, this is the issue addressed previously by the Eleventh Circuit Court of Appeals in the *Butler* decisions. Additionally, *Younger* abstention may also bar federal lawsuits brought by third parties, such as Plaintiffs, which seek to directly interfere with the disciplinary actions against Moore. It is patently clear that the mere fact that a plaintiff in a federal court action is not a party to the state proceeding which he asks a federal court to enjoin is not a ground for rejecting *Younger* abstention. *See, e.g., Hicks v. Miranda*, 422 U.S. 332,

Banc, 11th Cir. Appeal No. 00–14137–DD. Thus, the *Butler* decisions do not address the

application of the *Younger* abstention doctrine in the context of third party claims.

95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Spargo v. New York State Comm'n on Judicial Conduct,* 351 F.3d 65 (2nd Cir. 2003); *Casa Marie, Inc. v. Superior Court of Puerto Rico,* 988 F.2d 252 (1st Cir.1993); *The News–Journal Corp. v. Foxman,* 939 F.2d 1499 (11th Cir.1991).

For example, the United States Supreme Court applied *Younger* abstention to bar a Section 1983 action brought by a business owner challenging the constitutionality of a state ordinance under which the business owner's employees, not the business owner himself, were being criminally prosecuted and whereby the business owner's property had been seized. *See Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223. In that case, *Younger* abstention applied because: (1) the owner had a "substantial stake" in the state prosecution; (2) the interests of the owner and the employees being prosecuted were "intertwined"; (3) both parties were represented by the same attorney; and (4) there was no showing made that the owner could not seek the return of his property or present federal constitutional claims in the state court prosecution of his employees. *Id.* Additionally, after filing the federal suit, but before the Supreme Court ruled, the business owner himself was charged under the same criminal statute and could clearly bring his claims in the

state court action against him. *Id.* In those circumstances, the United States Supreme Court was satisfied that *Younger* abstention barred a federal action by a person who was not the subject of the state court proceeding, but who was seeking to directly interfere in the state court proceeding.[14]

The fact that Plaintiffs in this case seek to directly interfere with the pending proceedings for the removal of Moore makes this case the kind of direct attack on the prosecution of another which makes *Younger* abstention appropriate. When third parties' claims directly affect the prosecution in the state court, abstention is required. *See, e.g., Spargo,* 351 F.3d 65 (third party plaintiffs' claims were essentially derivative and sought to directly interfere with pending disciplinary proceeding against judge by requesting that the proceeding against the judge be enjoined and *Younger* abstention applied to bar their claims especially because the judge could adequately represent the interest of the third parties and because the third parties could file *amicus* briefs); *Casa Marie, Inc.,* 988 F.2d 252 (residents of a housing facility barred by *Younger* abstention from bringing suit to enjoin enforcement of a final judgment in a case against owner of the housing facility requiring that the facility be closed because although the

**14.** Following *Hicks,* some cases rejected *Younger* abstention and allowed third parties to proceed with federal cases which indirectly might affect pending state court prosecutions of others. *See, e.g., Robinson v. Stovall,* 646 F.2d 1087 (5th Cir. June 1981). The determinative factor in these cases seems to be the fact that the plaintiffs themselves feared future prosecutions under the laws they challenged in their federal cases, which happen to be the same laws under which others faced prosecution in state court. Thus, *Younger* principles are not invoked merely because the relief sought in the federal case by the third parties has an impact on state government machinery as it is being brought to bear on

the prosecutions of other persons. It is important to note that in the cases in which it was held that *Younger* abstention presented no bar, the plaintiffs were *not* trying to directly enjoin a pending state prosecution of someone. They are concerned with enjoining future prosecutions of themselves. By their own arguments, Plaintiffs in this case concede that they face no risk of future disciplinary action pursuant to the removal provision of the Alabama Constitution to which they object. Indeed, it is patently clear from the allegations of the Complaint that Plaintiffs seek to directly interfere with the proceedings against Moore. Therefore, cases like *Robinson v. Stovall* are inapposite.

residents were third parties their interests were so closely related to the interests of the facility owner and because they could have intervened in the state court action); *The News–Journal Corp.*, 939 F.2d 1499 (*Younger* abstention barred newspaper's federal suit against state court judge seeking to lift gag order prohibiting news reports on a pending criminal case because newspaper had direct appeal of gag order in the state court system and because rights of the criminal defendant would be affected if gag order was lifted).

The *Spargo* case provides an apt analogy to the instant case. An elected state court judge facing charges that he violated state judicial conduct rules filed suit in federal court pursuant to Section 1983 claiming that the rules of judicial conduct pursuant to which he had been charged violated his rights under the First Amendment of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. 351 F.3d at 67. Joining the judge as plaintiffs in his Section 1983 action were some of the judge's political supporters. *Id.* The plaintiffs sought to enjoin the pending disciplinary proceeding and obtain a declaration that the judicial conduct rules were unconstitutional. *Id.* The district court granted the relief the plaintiffs sought. *Id.* The defendants appealed the case to the Second Circuit Court of Appeals arguing that, in accordance with the *Younger* doctrine, the district court should have abstained from exercising jurisdiction over the plaintiffs' suit in deference to the ongoing disciplinary proceeding. *Id.*

The Second Circuit held that "proper deference to [the state's] paramount interest in regulating its own judicial system mandates the exercise of *Younger* abstention over plaintiffs' claims." *Id.* at 68. Accordingly, it vacated the lower court's judgment and injunction and remanded the case with instructions that the district court abstain from exercising jurisdiction over the plaintiffs' action. *Id.* In reaching its holding, the Second Circuit specifically considered whether *Younger* abstention should apply to the related claims raised by the judge's supporters, who were not parties to the ongoing disciplinary proceeding. *Id.* at 81–85. Finding the legal interests of these supporters "sufficiently intertwined" with those of the judge himself and recognizing that the supporters' claims were "essentially derivative," the Second Circuit held that *Younger* abstention extended to bar the supporters' claims even though they were not directly involved in the pending state proceeding against the judge. *Id.*

Like Plaintiffs in this case, the judge's supporters in *Spargo* sought to directly interfere with the pending disciplinary proceeding against the judge by the injunctive relief they sought. *Id.* at 81. Just as in *Spargo*, Plaintiffs in this case urge claims that are essentially derivative from Moore's claims and their legal interests are sufficiently intertwined with Moore's interests for *Younger* to bar their claims. This is particularly true because Plaintiffs seek protection for "the afterlife" of their votes, which is embodied by Moore's continued service as Chief Justice. Moreover, the Second Circuit noted that the supporters could seek to appear as *amici curiae* and that the judge could, if he chose to do so, adequately represent the supporters' interests. *Id.* The same is true in this case. This Court finds the reasoning of *Spargo* persuasive. Consequently, this Court holds that pursuant to the *Younger* doctrine, it must abstain from exercising jurisdiction over Plaintiffs' claims. Thus, to the extent that the Motion to Dismiss is premised on *Younger* abstention, it is due to be GRANTED. Even if this Court were to decline to abstain from hearing this case as Plaintiffs urge, the result would be no different. As

set forth below, the Court finds, in the alternative, that this case is also due to be dismissed because Plaintiffs fail to state a claim pursuant to which relief can be granted.

## C. FAILURE TO STATE A CLAIM

■ Defendants argue that Plaintiffs' Complaint fails to state a claim upon which relief can be granted and seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs assert that they have stated claims for relief under the Voting Rights Act and Section 1983,[15] and seek a denial of the Defendants' motion. The Court addresses each of the Plaintiffs' claims as alleged in the Complaint and finds that each of the claims fails to state a claim upon which relief may be granted.

### 1. Section 1983 Claim

Plaintiffs' first claim for relief, which is brought pursuant to Section 1983, alleges that Defendants' removal of Moore violated their constitutional rights secured by the Fourteenth Amendment to the United States Constitution. Plaintiffs allege that Moore's removal by the Defendants had the effect of administering an unequal system of voting which denies equal treat-

ment and dignity to Alabama voters. Compl. at ¶ 19. Plaintiffs further allege that Defendants' actions deprived Plaintiffs of their "fundamental" right to vote and "deprived [them], and their individual vote, from having any significance and/or equality in any election." *Id.* at ¶ 20. According to Plaintiffs, this conduct of the Defendants has violated Plaintiffs' rights to "equal protection, due process, and the privileges or immunities of citizens of the United States as guaranteed by the Fourteenth Amendment." *Id.* at ¶ 21. As this Court must accept Plaintiffs' allegations as true, the question presented is whether these allegations suffice to state a claim under Section 1983.

■ To state a claim for relief under Section 1983, Plaintiffs must allege that a person acting under color of state law deprived them of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g., Am. Mfgs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). In the case at bar, there is no dispute that Defendants acted under color of state law. Thus, the issue before this Court is whether Defendants' removal of Moore deprived Plaintiffs of a federally protected right,[16] to wit, their constitution-

---

**15.** Plaintiffs also argue that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is inappropriate in this case because it presents a novel legal theory. For this proposition they cite *Baker v. Cuomo,* 58 F.3d 814 (2nd Cir.1995), a case in which the Second Circuit Court of Appeals reversed a *sua sponte* dismissal of a lawsuit brought by incarcerated felons proceeding *pro se.* The unique procedural posture of *Baker* makes it distinguishable. Moreover, the Court notes that *Baker* does not stand for the proposition that cases presenting novel legal theories are never to be dismissed for failure to state a claim. Indeed, such a holding would eviscerate Rule 12(b)(6)'s appropriate place in the procedural rules under which cases proceed in federal court. *Baker,* which is not binding precedent, states that dismissals for failure to

state a claim are "especially disfavored in cases where the complaint sets forth a novel legal theory *that can best be assessed after factual development."* 58 F.3d at 818–19 (emphasis added). The Court finds that the assessment of the merits of Plaintiffs' legal theory in this case can adequately be assessed without factual development, and consequently, dismissal of this action for Plaintiffs' failure to state a claim should not be rejected simply because Plaintiffs' theories are novel.

**16.** Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

al rights under the Fourteenth Amendment.[17]

In the Complaint, Plaintiffs allege violations of two types of constitutional protections provided by the Fourteenth Amendment: due process and equal protection. The Court addresses both issues.

### a. Due Process Claim

■ Plaintiffs argue that they had a property interest in their votes cast for Moore in his election to office and contend that Defendants' actions in the removal of Moore denied them due process. However, Plaintiffs cannot establish that their rights to vote constitute a sufficient property interest to give rise to a Due Process claim. *See Johnson v. Hood*, 430 F.2d 610, 612 (5th Cir.1970).[18] In *Johnson*, the plaintiffs alleged that the county election commission's decision to reject ten ballots as improper was arbitrary, capricious and without any reasonable basis. In a *per curiam* opinion ordering dismissal, the Former Fifth Circuit Court of Appeals rejected this argument and ruled that these facts, even if true, failed to support a violation of the Due Process Clause. The Court held that

[T]he right to vote in a state election, in itself, is not a right secured by the Constitution or by federal law. Thus, even an improper denial of the right to vote for a candidate for a state office achieved by state action " * * * is not a denial of a right of property or liberty secured by the due process clause."

*Johnson*, 430 F.2d at 612 (citation omitted). Accordingly, as Plaintiffs' rights to vote alleged in their Complaint are premised upon the rights to vote for a candidate for a state office, namely Moore, said rights do not constitute a sufficient property interest to give rise to a Due Process claim.[19]

Plaintiffs rely heavily upon two cases decided by the United States Supreme Court, *Wilson v. North Carolina*, 169 U.S. 586, 18 S.Ct. 435, 42 L.Ed. 865 (1898) and *Sheet Metal Workers' Int'l Ass'n, v. Lynn*, 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989), to support their Due Process violation arguments. This Court finds however that these case are inapplicable to the facts herein.

In *Wilson*, the United States Supreme Court addressed the issue of federal jurisdiction in an action involving the Gover-

---

**17.** The Fourteenth Amendment provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

**18.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

**19.** The Court notes that the Due Process Clause of the Fourteenth Amendment pro-

vides two types of constitutional protection: procedural due process and substantive due process. "A violation of either ... may form the basis for a suit under section 1983." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir.1994). This Court however need not characterize Plaintiffs' claims as either substantive or procedural due process claims because both due process claims require Plaintiffs to possess a protected property interest. *See Arrington v. Dickerson*, 915 F.Supp. 1503, 1508 (M.D.Ala.1995) (noting that in order for the plaintiff to state a substantive or procedural due process claim, he must possess a protected property or liberty interest). Accordingly, as Plaintiffs' rights to vote for Moore do not constitute a protected property interest, this Court finds that Plaintiffs fail to state a substantive or procedural due process claim.

nor's suspension of the state railroad commissioner. Although the plaintiff alleged that a violation of due process occurred, the Court held that no federal question, and thus no federal jurisdiction, existed in the case because

> [t]he controversy relates exclusively to the title to a state office, created by a statute of the state, and to the rights of one who was elected to the office so created. Those rights are to be measured by the statute and by the constitution of the state, excepting in so far as they may be protected by any provision of the federal constitution.

*Wilson*, 169 U.S. at 592, 18 S.Ct. 435. The United States Supreme Court noted that "[it] should be very reluctant to decide that [it] had jurisdiction in such a case, and thus, in an action of this nature, to supervise and review the political administration of a state government by its own officials, and through its own courts." *Id.* at 596, 18 S.Ct. 435. Whereas the outcome of *Wilson* is contrary to Plaintiffs' position, Plaintiffs urge this Court to ignore the reasoning in *Wilson* and apply the following isolated principle stated in *Wilson:*

> The jurisdiction of this court would only exist in case there had been, by reason of the statute and the proceedings under it, *such a plain and substantial departure from the fundamental principles upon which our government is based that it could with truth and propriety be said that, if the judgment were suffered to remain, the party aggrieved would be deprived of his life, liberty, or property in violation of the provisions of the federal constitution.*

*Id.* at 596, 18 S.Ct. 435 (internal citation omitted) (emphasis added). The United States Supreme Court did not provide any examples to which this principle applies. Nonetheless, Plaintiffs rely upon this *dicta* and contend that the removal of Moore is "a plain and substantial departure from the fundamental principles upon which our government is based."

Plaintiffs' argument and proffered narrow application of *Wilson* is unpersuasive. Plaintiffs unmistakably fail to explain why this Court should follow the above mentioned general principle in *Wilson,* rather than its main holding. This Court cannot ignore the United States Supreme Court's clear expression of intent in its *Wilson* holding and adopt Plaintiffs' argument without due justification. Moreover, to the extent that the above mentioned principle may be applicable to this case, this Court finds that the facts herein present no such "plain and substantial departure from the fundamental principles upon which our government is based that it could with truth and propriety be said that, if the judgment were suffered to remain, the party aggrieved would be deprived of his life, liberty, or property in violation of the provisions of the federal constitution." Indeed, such a holding by this Court would broaden the aims of the Due Process Clause to encompass unlimited voting rights claims and would also result in the filing of voluminous constitutional claims premised upon the actions of a state in the removal of state elected officers.

Plaintiffs also assert that the United States Supreme Court's decision in *Sheet Metal Workers' Int'l Ass'n, v. Lynn,* 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) supports their position. In, *Sheet Metal,* which is a Labor–Management Reporting Disclosure Act (hereinafter "LMRDA") action, an elected union official was removed from office in retaliation for "his outspoken opposition to [a] dues increase." *Id.* at 350, 109 S.Ct. 639. The Supreme Court held that the removal of the local union's elected business agent violated the "free speech" provisions of the LMRDA. Interestingly, Plaintiffs assert that the removal of Moore deprived them

of the representative of their choice and refer this court to the following *dicta* in *Sheet Metal* as support:

> The consequences of the removal of an elected official are much different. To begin with, when an elected official like Lynn is removed from his post, the union members are denied the representative of their choice.

488 U.S. at 644–645, 109 S.Ct. 858. Plaintiffs' reasoning, however, overlooks the Supreme Court's clear articulation in the opinion that the case addressed "the internal governance of labor unions." *Id.* at 641–642, 109 S.Ct. 858. Obviously, *Sheet Metal,* is necessarily limited in its application to actions pursuant to the LMRDA. Given that this case has nothing whatsoever to do with the LMRDA, the Court finds that any reliance on *Sheet Metal* is misplaced.

Accordingly, as Plaintiffs' reliance on *Wilson* and *Sheet Metal* is insufficient to overcome the holding in *Johnson,* this Court finds that Plaintiffs' claims are not subject to protection under the Due Process Clause. Thus, Plaintiffs have failed to state a claim under the Due Process Clause and Defendants' motion to dismiss is due to be GRANTED.

**b. Equal Protection Claim**

Plaintiffs allege that the removal of Moore constituted an unequal system of voting which denied equal treatment, or equal protection, to the Alabama voters. Plaintiffs also allege that Defendants deprived them of their "fundamental right to vote ... and have deprived [Plaintiffs], and their individual vote, from having any significance and/or equality in any election." Compl. at ¶ 20.

 It is undeniable that a fundamental right to vote exists. The United States Supreme Court has held that voting is a fundamental right, secured by the equal protection clause. *Harper v. Virgi-*

*nia State Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). Today, the right to vote in state as well as in federal elections, and the protection afforded that right by the federal Constitution, are unquestioned. *Id.; Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The rationale for finding this right in the Constitution was expounded by the Supreme Court in *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964):

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.

"The constitutional right established in *Reynolds v. Sims,* however, is not absolute and is properly limited by respect for the political and federal framework established by the Constitution. This framework leaves the conduct of state elections to the states." *Gamza v. Aguirre,* 619 F.2d 449, 453 (5th Cir.1980). Therefore, this Court must

> recognize a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite nondiscriminatory laws, may result in the dilution of an individual's vote. Unlike systematically discriminatory laws, *isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause.*

*Id.* (emphasis supplied). The Supreme Court has made clear that the "right to vote" discussed in *Reynolds* must be understood as a narrow substantive right, conferred by the equal protection clause, "of a person to vote on an equal basis with other voters." *City of Mobile v. Bolden,* 446 U.S. 55, 78, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980).

The question Plaintiffs present is whether Defendants, by the removal of Moore, violated Plaintiffs' fundamental rights to vote protected by the Equal Protection Clause. Put another way, this Court must determine whether Plaintiffs' allegations suffice to state an Equal Protection Clause claim.

■ To establish an Equal Protection Clause claim, a plaintiff must show that he was treated differently from other individuals similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike"). The very essence of an equal protection claim is that a defendant's actions were triggered by discriminatory animus. *See Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490 (11th Cir.1995) (To establish a violation of the Equal Protection Clause, plaintiffs must prove discriminatory motive or purpose).

■ In the case *sub judice*, assuming without deciding that Plaintiffs have standing to bring their equal protection claim,[20] this Court finds that said claim suffers for lack of an allegation of intentional or purposeful discrimination. Even assuming *arguendo* that Defendants' action constituted an unlawful administration by state officers of a non-discriminatory state law "resulting in its unequal application to those who are entitled to be treated alike," such action is "not a denial of equal protection *unless* there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (emphasis added). *See also Arrington v. Dickerson*, 915 F.Supp. 1503, 1509 (M.D.Ala.1995). Thus, the allegation that Plaintiffs were treated differently from others, namely that their votes were treated differently than Defendants' "votes," will not establish an equal protection claim absent sufficient facts alleged to show that Defendants acted with discriminatory intent. *See Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394 (11th Cir.1993) (To establish an equal protection violation, plaintiff must demonstrate that challenged action was motivated by an intent to discriminate). Here, Plaintiffs fail to make such allegations.

■ Furthermore, the factors a court may consider in determining whether state action was motivated by discriminatory animus, for purposes of an equal protection claim, include: (1) the disparate impact of the official action; (2) the historical background of the decision; (3) the specific sequence of events leading up to the challenged decision; and (4) the legislative or administrative history. *In re Employment Discrimination Litig. Against State of Ala.*, 198 F.3d 1305 (11th Cir.1999). Plaintiffs have not alleged that any of these factors are satisfied nor do the facts appear to be satisfied.

"Equal protection does not exist in a vacuum; '[t]he Constitution does not re-

---

**20.** To satisfy the case or controversy requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate that (1) he has suffered an injury in fact, (2) the injury is fairly traceable to the actions of the defendant and (3) the injury will likely be redressed by a favorable decision. *See Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The Court questions whether Plaintiffs have articulated any injury in fact related to equal protection. However, the Court need not decide the issue because the claims are due to be dismissed for failure to state a claim upon which relief can be granted.

quire things which are different in fact or opinion to be treated in law as though they were the same.'" *Arrington,* 915 F.Supp. at 1510 (citation omitted). Plaintiffs urge this Court to treat their votes, which were cast in Moore's favor as part of the 2000 general election, the same as Defendants' unanimous verdict in 2003 to remove Moore from office. Inherent in Plaintiffs' argument is the contention that this unanimous verdict constituted a second electoral process in which each defendant "voted" in favor of Moore's removal. These "votes" are by no means the same, nor were these "votes" cast in similar situations. Defendants did not cast a "vote" against Moore; they rendered an unanimous verdict requiring his removal from office for ethical violations after adjudicating the charges against him. Moreover, Plaintiffs fail to present, and this Court is unaware of, any law that requires these "votes" to be viewed as analogous suffrage.

■ Nonetheless, even if this Court adopted Plaintiffs' argument that such analogous suffrage exists, the same conclusion results: no claim that votes were unconstitutionally diluted can be made out under the Equal Protection Clause in the absence of evidence of discriminatory in-

tent. *See Gamza,* 619 F.2d at 454 n. 6. As a result, even assuming that all of Plaintiffs' allegations are true, their Equal Protection claim must be dismissed for failure to state a claim upon which relief may be granted.[21]

### 2. Voting Rights Act Claim

■ As previously discussed, Plaintiffs' second claim for relief alleges that Defendants' removal of Moore violated their rights under Section 2 of the Voting Rights Act. Plaintiffs allege that Moore's removal by the Defendants had the effect of denying and abridging Plaintiffs' rights to vote by "destroying the significance of each and every vote" which resulted in "creating and maintaining an unequal system of voting." Compl. at ¶ 24. Plaintiffs further allege that said "unequal system of voting" abridges their "right to vote (and have their vote counted and with significance) in violation of the Voting Rights Act." *Id.* Assuming without deciding that Plaintiffs have standing to enforce Section 2 of the Voting Rights Act,[22] this court finds that Plaintiffs' allegations fail to state a claim cognizable under the Voting Rights Act.

The Voting Rights Act provides

---

21. The Court notes that whether Plaintiffs allege that their inability to attend Moore's public trial implicated their Fourteenth Amendment rights is unclear. However, to the extent that Plaintiffs proffer such allegations, the Court finds that these allegations also fail to state a claim upon which relief may be granted.

22. In the alternative, Plaintiffs' claims under the Voting Rights Act are due to be dismissed for lack of standing. To satisfy the case or controversy requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate that (1) he has suffered an injury in fact, (2) the injury is fairly traceable to the actions of the defendant and (3) the injury will likely be redressed by a favorable decision. *See Bennett,* 520 U.S. at 162, 117 S.Ct. 1154. In

addition to these constitutional limitations, the courts have also developed prudential requirements of standing, including the requirement "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id.* In the present case, the zone of interest protected by the Voting Rights Act is an abridgment of the right to vote *on account of race, color, or language minority.* See 42 U.S.C. §§ 1973, 1973b(f)(2). Because Plaintiffs have failed to allege facts tending to show that the Court of the Judiciary took any action on account of the race, color or language minority of Plaintiffs, the claims do not fall within the zone of interest protected by the Voting Rights Act and are therefore due to be dismissed because of Plaintiffs' lack of standing.

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2)[23] of this title, as provided in subsection (b) of this section.

(b) A violation of subsection (a) of this section is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided,* That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973. As used in the Voting Rights Act the terms "vote" or "voting"

shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this subchapter, or other action required by law prerequisite to voting, casting a ballot, and having such a ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

42 U.S.C. § 1973l(c)(1).

Plaintiffs argue that, pursuant to the Voting Rights Act, all votes are to be treated equal and that their votes, which presumably placed Moore in office, are being treated unequal to the Defendants' "votes" which removed Moore from office. Plaintiffs maintain that the voters of the State of Alabama elected Moore in an open election, and that the Defendants' actions in removing Moore from office resulted in the overturning of that lawful election. According to Plaintiffs, this removal of Moore, an elected official, by a non-elected body, namely the Court of the Judiciary, had a particularly severe impact on African–American, Hispanic and Asian–American voters and violated Plaintiffs' rights to vote as protected under the Voting Rights Act. Plaintiffs further argue that Defendants' actions in conducting Moore's trial or public hearing in Montgomery caused a hardship for African–American, Hispanic and Asian–American voters, due to said voters' geographic residences in other counties in the State, and that this hardship also resulted in violating Plaintiffs' rights under the Voting Rights Act.

■ Plaintiffs' argument that Defendants' actions in removing Moore implicated their voting rights, which had already been exercised in Moore's election, is unavailing. This argument is similar to one rejected by the Fifth Circuit Court of Appeals in *Smith v. Winter,* 717 F.2d 191 (5th Cir.1983).[24] In *Smith,* three African–

---

**23.** 42 U.S.C. § 1973b states that no voting qualification, prerequisite, standard, practice, or procedure may be imposed to deny or abridge the right to vote based on membership in a language minority group.

**24.** Unfortunately, there is no case in this Circuit addressing the scope of the right to vote as protected by the Voting Rights Act under similar factual circumstances.

American county board of education members challenged Mississippi's recall election procedure under Section 2 of the Voting Rights Act by alleging that the recall proceedings abridged the minorities' rights to effective votes by threatening the removal of officials for whom those votes were cast. The Fifth Circuit Court of Appeals considered the scope of the "right to vote" protected by the Voting Rights Act and, applying the Former Fifth Circuit's broad interpretation [25] of said right, determined that the right to vote cannot be read so broadly as to support the notion that "the right to vote entails not only a right for the citizen to make his voice heard in the electoral process, but the right as well to maintain his choice in the public office if successful." *Id.* at 198. The Fifth Circuit elucidated that "if the right to vote stops short of the right to hold office, it necessarily also stops short of any absolute right to resist recall from office," and concluded that the recall process did not threaten minority members' rights to an effective vote, and hence, did not give rise to claims under the Voting Rights Act. *Id.* at 198–199.[26]

■ Similarly, in this case, this Court cannot construe Plaintiffs' rights to vote under the Voting Rights Act so broadly as to encompass a right to maintain Moore in public office or resist Moore's removal from office. Although Plaintiffs conceded in oral argument that their rights to vote do not inherently comprise the right to maintain their choice in public office, Plaintiffs argue that a vote has an "afterlife" and that "[e]qual treatment and dignity

must be granted to each and every vote, not only at the time of election, but throughout the term of the elected official.[27]" Plaintiffs however fail to present any legal authority to support their argument or rationale, and this Court finds none. Rather, this Court has found legal authority, albeit not binding precedent, which spurns Plaintiffs' argument. In *Smith*, the Fifth Circuit, paying heed to the potential problems which could result due to the adoption of such an argument, rejected such an expansive interpretation of the right to vote.

To adopt the plaintiffs' view of the right to vote poses unruly problems. For instance, how may we ever know whose effected right to vote any particular candidate embodies, so that we may know whose "vote effectiveness" is sought to be maintained? Given the sanctity of the secret ballot process in our Republic, individual votes cannot be traced from minority members' ballots into the public office. Not even postulates on which racial bloc voting calculations are based assume that all minority support was given to one public official, or provide anything more than a general measure of the degree to which that support is dispersed among public officials. Certainly they do not seek to establish that a particular public official is accountable to minority interests for any precise portion of his or her total political powers. It is as reasonable to assume that every elected official embodies the vote of at least some minority member. If we followed the plaintiffs' view of the right to

---

25. *See Kirksey v. Bd. of Supervisors,* 554 F.2d 139, 142 (5th Cir.1977) (interpreted right to an effective vote broadly as a right of meaningful access to the political process rather than narrowly as a mere right of registration and access to the ballot box).

26. It is important to note that the Fifth Circuit advised the plaintiffs that "their appro-

priate remedy lies in making an equal protection claim ... because it does not arise under a law stated specifically in terms of racial equality...." *Id.* at 199.

27. Pls.' Mem. of Points and Authorities in Supp. of Ex–Parte Application for Temp. Restraining Order, filed Nov. 20, 2003 (Doc. # 6) at p. 8.

vote to its logical conclusion, every elected public official, whether a minority member or not, could seek removal to federal court of any state [removal] proceeding merely by alleging that the voting rights of an electorate containing at least one minority member were being discriminatorily abridged. Other absurd results are equally possible. For instance, if minority members vote for a candidate on the basis of a campaign promise and the candidate later breaches that promise with discriminatory effects, the minority voters could claim their rights to vote have been rendered ineffective so as to give rise to claims under the Voting Rights Act.

717 F.2d at 198–199. This Court shares the Fifth Circuit's view on this issue and declines to adopt Plaintiffs' argument to the contrary. Thus, it seems clear that if the right to vote does not entail a right for the citizen to maintain his choice in the public office or to resist removal from office, it necessarily also does not entail any right to an "afterlife" of a vote. Simply put, this Court finds that Plaintiffs' rights to vote under the Voting Rights Act were consummated and made effective in the election of Moore. Defendants' actions in removing Moore from office did not implicate those rights.

■ In addition, it is clear · that the Voting Rights Act confers the right to vote specifically in terms of racial equality. *See* 42 U.S.C. § 1973(a) (No voting qualification or prerequisite to voting ... shall be imposed or applied by any State ... in a manner which results in a denial or abridgement of the right of any citizen ... to vote on *account of race or color* ...) (emphasis added). Plaintiffs however fail to acknowledge this powerful principle in their arguments and allegations. To establish a claim under the Voting Rights Act, it is not sufficient to allege that a removal procedure constitutes a voting practice or procedure and that irregulari-

ties transpired. It must also be established that there has been a denial or abridgement of the right to vote on account of race, color, or language minority. *See Smith*, 717 F.2d at 197. Although Plaintiffs argue that the removal procedure constituted a voting practice or procedure and that their election votes were treated unequal to Defendants' removal votes, Plaintiffs fail to allege or establish that there has been a denial or abridgment of their right to vote *on account of their race, color, or language minority.* Put another way, Plaintiffs fail to allege or establish that such unequal treatment of votes occurred *on account of race, color, or language minority.*

■ Moreover, even assuming *arguendo,* that the removal procedure constitutes a political process or voting practice protected under the Voting Right Act, Plaintiffs do not allege that the conduct complained of has the purpose or effect of denying or abridging minorities' rights to vote; nor do they allege that minorities were denied access to participate in the political process that led to Moore's removal. Although Plaintiffs allege that minorities faced a hardship in attending Moore's public trial in Montgomery, they do not allege or establish that minorities were denied access to the public trial or had less opportunities than others to attend the public trial *on account of race, color, or language minority.* In sum, Plaintiffs have failed to allege or establish that Defendants' actions in removing Moore, an official for whom Plaintiffs' votes were cast, resulted in a denial or abridgement of Plaintiffs' rights to vote on account of Plaintiffs' race, color, or language minority.

■ As Plaintiffs argue, the right to vote is fundamental to our system of government. Allegations by voters that their right to vote has been unlawfully denied or

impaired must be considered with the utmost care. The Voting Rights Act is a powerful tool for eradicating racial discrimination as a barrier to equal voting rights for all citizens. It is not a tool that can be operated by voters in an effort to forever maintain their choice in the public office. Accordingly, this court finds that Plaintiffs have failed to state a cognizable claim under the Voting Rights Act. Defendants' motion to dismiss on these grounds is therefore due to be GRANTED.

## VI. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. # 8) is GRANTED. An appropriate judgment will be entered.

### *JUDGMENT*

In accordance with the Memorandum Opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the Court that the Motion to Dismiss filed by Defendants on November 20, 2003 (Doc. # 8), is GRANTED, and this case is DISMISSED WITH PREJUDICE. It is further ORDERED that Plaintiffs' Petition for Preliminary Injunction, filed November 20, 2003 (Doc. # 3), is DENIED as MOOT.

It is further ORDERED that costs are taxed against Plaintiffs, for which execution may issue.

The Clerk of the Court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.